# In the
# United States Court of Appeals
## for the Eighth Circuit

AMERICAN AUTOMOBILE INSURANCE COMPANY,

*Plaintiff-Appellant,*

v.

OMEGA FLEX, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Missouri, St. Louis, No. 4:11-cv-00305-AGF.
The Honorable **Audrey G. Fleissig**, Judge Presiding.

## ADDENDUM TO BRIEF OF APPELLANT

ANTHONY J. MORRONE
THADDEUS C. BARIA
COZEN O'CONNOR
333 West Wacker Drive
Suite 1900
Chicago, IL 60606
Tel: (312) 382-3100
Fax: (312) 382-8910
Email: amorrone@cozen.com
        tbaria@cozen.com

MARK E. UTKE
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2164
Fax: (215) 701-2164
Email: mutke@cozen.com

STEPHEN D. HOYNE
STEPHEN D. HOYNE
   ATTORNEY AT LAW
P.O. Box 210
St. Louis, MO 63026-0210
Tel: (314) 306-6399
Fax: (636) 225-7818
Email: stevehoyne@charter.net

*Attorneys for Appellant*


Appellate Case: 14-1783     Page: 1     Date Filed: 07/07/2014 Entry ID: 4172530

# TABLE OF CONTENTS

Memorandum and Order, Dkt. 96, Filed 6/11/13 ...............................ADD-01

Memorandum Regarding Defendant's Motion in
Limine No. 4, Dkt. 157, Filed 6/28/13 ...............................................ADD-33

Memorandum and Order, Dkt. 209, Filed 3/5/14 ..............................ADD-39

i

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AMERICAN AUTOMOBILE     )
INSURANCE COMPANY,     )
as assignee of FRED AND     )
ADRIENNE KOSTECKI,     )
     )
     Plaintiff,     )
     )
     v.     )     Case No. 4:11CV00305 AGF
     )
OMEGA FLEX, INC.,     )
     )
     Defendant.     )

**MEMORANDUM AND ORDER**

Plaintiff American Automobile Insurance Company ("Plaintiff") brings this action against Defendant Omega Flex, Inc. ("Defendant") to recover funds Plaintiff paid its insureds, Fred and Adrienne Kostecki, following a fire at the Kostecki residence in High Ridge, Missouri.  Plaintiff asserts that TracPipe, Corrugated Stainless Steel Tubing ("CSST"), manufactured and sold by Defendant, and used to transport propane into the home, was defective and caused the fire.  On this basis, Plaintiff alleges liability for three claims: negligent product design; strict liability, under defective product and failure to warn theories; and breach of warranty arising from the use of the TracPipe.

Now before the Court are the parties' cross motions for summary judgment and motions to strike the opinion testimony of expert witnesses pursuant to *Daubert v. Merrell Dow Pharmaceuticals., Inc*., 509 U.S. 579 (1993).  The parties have fully briefed the motions and the Court heard oral argument.  For the reasons set forth below,

ADD-01

Defendant's motion to exclude the opinion testimony of Dr. Thomas Eagar is granted in part and denied in part; Plaintiff's motion to exclude the testimony of Dr. Harri Kytomaa is denied; Defendant's motion for summary judgment is granted in part and denied in part; and Plaintiff's motion for summary judgment is denied.

## I.  Background

Upon review of the record, the exhibits and affidavits attached thereto, the Court finds the following facts, which are undisputed, except where noted.

In 2001, Fred and Adrienne Kostecki contracted with HIW, Inc. ("HIW"), to build a house at 3460 Whitby Lane, High Ridge, Missouri ("the Kostecki residence".) Unidentified contractors retained by HIW installed TracPipe CSST to transport propane to and within the residence.  HIW declared bankruptcy shortly before it finished building the Kostecki residence.

The Omega Flex 2001 TracPipe Design Guide and Installation Instructions ("2001 D&I Guide"), applicable at the time of the Kostecki construction, provides "general instructions" for the "installation and design" of a TracPipe CSST system.  (Doc. No. 56-4, at 3.)  The 2001 D&I Guide provides that only a "qualified person who has been trained or otherwise qualified" to install the TracPipe may do so, and states that the "general instructions" for design and installation are to be "used in conjunction with state and local building codes."  *Id.*   On the same page the 2001 D&I Guide states in bold, underlined typeface that "**Local codes will take precedence in the event of a conflict between this guide and the local code**."  *Id.*  In the next sentence, the 2001 D&I Guide

ADD-02

provides that '[i]n the absence of local codes installation must be in accordance with the NATIONAL FUEL GAS CODE. . . . *Id.*

The first page of the 2001 D&I Guide contains a heading reading "WARNINGS" followed by the words "Limitations of Manual" and a black box labeled "WARNING!" stating that "[t]he installation instructions and applicable local codes must be strictly followed." *Id.*  Several pages of specific installation instructions and an illustration follow, describing, among other things, the bonding of the TracPipe to the household grounding electrode during installation. *Id.* at 4-20.  This section of the 2001 D&I Guide concludes with a warning that "bonding is a requirement of the National Electrical Code, which must be followed for all gas piping materials including CSST." *Id.* at 22.  The 2001 D&I Guide does not include any representations regarding TracPipe's merchantability or fitness for a particular purpose. *Id.*

It is undisputed that during installation the TracPipe in the Kostecki residence was not bonded with a bonding clamp and bonding wire of 6 AWG thickness as described in the 2001 D&I Guide.  Mr. Ronald Juergens and Mr. Mark Goodsong, Plaintiff's electrical engineering experts, testified at their depositions that the Kostecki installation did not have a bonding clamp that was attached to the CSST or a bonding wire of 6 AWG thicknesses for the product.  Instead, a three prong plug was used for grounding in accordance with the National Electric Code ("NEC") requirements referenced in the 2001 D&I Guide.[1]

---

[1]  Juergens testified at his deposition that Omega Flex's TracPipe Design Guide and Installation Instructions includes a "diagram that was depicted in the bonding section of

- 3 -

Defendant's Suggested Price List provides that Defendant "warrants to the original owner at the original installation site that the [TracPipe] will be free from defects in material or workmanship for one year from the date of installation." (Doc. No. 56-16, at 4.) The Suggested Price List further states that this limited warranty "does not apply if the Product has been subjected to misuse or neglect, has been accidentally or intentionally damaged, has not been installed, maintained or operated in accordance with the TracPipe Design and Installation Guide, or has been altered or modified in any way." *Id.* The Suggested Price List also states in bolded, upper case lettering that the limited warranty "is in lieu of all other warranties, either express or implied, and all such other warranties, including without limitation implied warranties of merchantability or fitness for a particular purpose, are hereby disclaimed and excluded from this limited warranty." *Id.*

Defendant provides its Suggested Price List to direct purchasers of TracPipe. The record does not indicate whether HIW or its subcontractor purchased the TracPipe from a dealer or directly from Defendant. There is no evidence that the Kosteckis received or

---

the guide" that showed "a bonding clamp that was attached to the CSST with instructions to use a bonding wire of 6 AWG thickness for the product." (Juergens Depo. Doc. No. 56-8, at 15:4-12). Juergens further testified that the Kostecki installation did not have a "bonding clamp that was attached to the CSST" or "a bonding wire of 6 AWG thickness for the product." *Id.* at 15:8-15. Plaintiff's electrical engineering expert, Mark Goodson, testified that the CSST system in the Kostecki house was not bonded to the household grounding electrode with a "dedicated bonding wire and bonding clamp." The system was grounded with a three prong plug.

ADD-04

read the Suggested Price List accompanying the TracPipe used in their home or that they received any other documents that might give rise to a warranty.

The Kosteckis moved into the residence in 2002, after it passed a local building code inspection.  Thereafter, they obtained a home owners' insurance policy from Plaintiff.  The policy period extended from May 7, 2009, to May 7, 2010, and covered up to $2,169,800 in damage to the Kosteckis' property ($1,142,000 for dwelling, $228,400 for other structures, and $799,400 for personal property), and $1,020,000 in liability and medical payments to others ($1,000,000 in personal liability for each occurrence and $10,000 for each person for medical payments to others).

The Policy provides in pertinent part:

Definitions

      *                              *                              *

C.  15.  Occurrence means:

      a. Under Coverage For Damage To Your Property:  accidental loss and damage to covered property which occurs during the policy period and is caused by one or more causes of loss we cover….

Property Losses Not Covered

      *                              *                              *

B.     1. We will not pay for loss caused by or resulting from any of the following.  However, any ensuing loss not excluded in this policy is covered

      *                              *                              *

      e. Inherent vice, hidden or latent defect or any quality in property that causes it to damage or destroy itself

- 5 -

ADD-05

\*                                          \*                                          \*

For the causes of loss described above, except collapse, we do cover resulting loss or damage to covered property unless the resulting loss is itself caused by a cause of loss described in Property Losses Not Covered.

   1.  We do not cover loss caused by any of the following

      \*                                          \*                                          \*

      c. faulty, inadequate or defective . . .

        (2)  design, specifications, workmanship, repair, construction, renovation, and remodeling, grading, compaction;

        (3)  materials used in repair, construction, renovation or remodeling;

  \*                                          \*                                          \*

Policy Conditions

  \*                                          \*                                          \*

I.  Subrogation

  \*                                          \*                                          \*

   2.  If we require assignment, an insured will sign and deliver all related papers and cooperate with us.

   3.  In the event of loss which we believe may be collectible from others, we may pay in the form of a loan to be repaid out of any recoveries from others.  You will cooperate in every way possible to assist in such recovery from others and we shall, at our expense, take over your rights against others to the extent of your payment.

Pursuant to a one-page document entitled "Assignment and Subrogation Receipt,"

Plaintiff bought an interest in the claims in this suit by paying the Kosteckis 50% of their

- 6 -

ADD-06

alleged losses.  The Receipt also provides that the Kosteckis retain a pro-rata uninsured interest in any recovery Plaintiff obtains.

Defendant sells TracPipe to wholesalers or distributors, who then sell to licensed installers.  At the time of purchase, installers are required to produce a card evidencing that they have been trained in TracPipe installation.  Installers obtain training cards by attending a training class conducted by a company representative, regional manager, manufacturer's reps, or a person at the wholesale level that has received training.

It is undisputed that Defendant's distributors are not supposed to sell TracPipe to anyone who does not have a training card, but Defendant has no program in place to assure that this requirement is followed or to inform its certified installers of changes in its installation guidelines.  It is also undisputed that installation instructions are not provided to certified installers at the point of purchase and new versions of D&I Guides are not provided to certified installers as they are updated.

On April 30, 2010, a thunderstorm moved through the High Ridge area, accompanied by rain and lightning.  A fire occurred at the Kostecki home during this lightning storm.  As a result of the fire the Kostecki property suffered severe heat, smoke, and water damage.

David Smith, Defendant's testifying fire investigator, has opined that the fire originated directly below the study where it was first observed and that the cause of the fire cannot be determined.  Smith's scene investigator conducted a burn pattern analysis indicating that the fire originated in or around the floor truss system between a bedroom on the lower level and the first floor study.  The fire spread through the flooring system in

- 7 -

ADD-07

this area, causing the floor in the study to collapse into the basement.  Robert Wysong, one of Plaintiff's experts, identified the same area as the origin of the fire.  It is undisputed that in the aftermath of the fire, two 2x5 mm perforations were found in the run of TracPipe CSST located in the area of the fire's origin.

## II. *Daubert* **Motions**

Each party has moved to strike the opinion testimony of one of the other's experts, contending that their respective opinions should be stricken as outside the scope of the witness' expertise and/or unsupported by a reliable methodology as required under Federal Rule of Evidence 702[2] and the Supreme Court's decision in *Daubert,* 509 U.S. 579.

### A. <u>Applicable Law</u>

Rule 702 sets forth standards for expert opinion testimony and is designed to ensure that all scientific testimony is both reliable and relevant and reflects the standards set forth in the United States Supreme Court decisions in *Daubert*, 509 U.S. at 579, and

---

[2]  A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

ADD-08

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999).  Under *Daubert,* courts act as gate-keepers to ensure that the proffered expert testimony is both relevant and reliable. *Daubert,* 509 U.S. at 592.  Proffered expert testimony should be excluded if it is speculative or conjectural.  *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010); *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 448 (8th Cir. 2010) (holding that "[s]peculative testimony should not be admitted").  Similarly, expert opinions lacking a factual basis or based on speculation or conjecture should not be permitted.  *Barrett*, 606 F.3d at 980.  To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.  *Id.*

The United States Supreme Court has emphasized that the test for reliability is flexible, and that a trial judge may, but need not, consider the specific factors identified in *Daubert*:  "whether a theory or technique can be and has been tested; whether it has been subjected to peer review and publication; the known or potential rate of error; and whether it is generally accepted in the relevant discipline."  *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (citing *Kuhmo Tire,* 526 U.S. at 149-50).  In addition, "[e]xpert evidence may be excluded if a court determines "that there is simply too great an analytical gap between the data and the opinion proffered."  *Id.* at 625 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  Neither "*Daubert* [n]or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Id.*

ADD-09

In the specific context of fire causation, the Eighth Circuit has advised that expert opinions may be found reliable when based solely upon observations and experience. *See, e.g.*, *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874-75 (8th Cir. 2007) (concluding that expert opinion based upon observation and expertise that engine failure caused a fire reliable because experts for both parties relied on this methodology and the engine components were too damaged to be tested); *Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1257 (8th Cir. 2006) (holding that a fire causation expert's opinion was admissible where the methodology involved no testing but the application of specialized knowledge to observations of a fire scene); *see also Kumho Tire*, 526 U.S. at 137 (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

If testing to establish fire causation is performed it "must be appropriate and must analytically prove the expert's hypothesis." *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 646-47 (8th Cir. 2009) (holding that metallurgical tests and flammability tests were insufficient to establish ignition or spread, and that opinions regarding ignition and spread should be excluded as speculative when based upon the witness' supposition).

Under Federal Rule of Evidence 704(a), expert testimony may embrace an ultimate issue in a case, but "'courts must guard against invading the province of the jury on a question which the jury [is] entirely capable of answering without the benefit of expert opinion.'" *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (quoting *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir.1998)).  Expert opinions

ADD-10

also may run afoul of Rule 403 because their potential prejudicial effect may outweigh their probative value.  *See* Fed. R. Evid. 403.

### B.  Opinions of Thomas Eagar, Ph.D.

Plaintiff's expert, Thomas Eagar, Ph.D., is a metallurgist and arc physicist, and a frequent litigation consultant in the area of metallurgy and metal failure.  Eagar is to offer expert opinion testimony with respect to three issues:  causation, *i.e.*, whether TracPipe caused the Kostecki fire; the efficacy of bonding to improve the safety of TracPipe; and whether TracPipe's design, including warnings and instructions was defective.  In Eagar's report, he opines that TracPipe was defective, that bonding would not have prevented the fire, and that Defendant's warnings and instructions were inadequate to warn of the danger posed by TracPipe.

With respect to causation, Eagar opines that a lightning-generated electrical arc perforated the TracPipe, releasing propane gas that ignited and in turn caused the fire.  This opinion is based on a metallurgic analysis of the voltage and duration of a hypothetical lightning strike; Eagar's asserted ability to discern whether the holes in the CSST are the result of lightning, or arcing from the household electrical system or other cause; and simulations of fire ignition consistent with Eagar's hypothesis.  On the basis of tests he performed, Eagar claims that perforations like the ones found here can in turn result in fires, but he has acknowledged various flaws in those tests.

In support of its *Daubert* motion, Defendant argues that Eagar's causation opinions are outside the scope of his expertise because he is not a specialist in fire causation.  In addition, Defendant asserts that Eagar's causation opinion is premised on a

ADD-11

series of steps unsupported by peer-reviewed scientific evidence or a reliable

methodology.  Defendant further contends that Eagar's opinion that an indirect lightning

strike was sufficient to perforate TracPipe is based on flawed testing, and also

inconsistent with his own testimony in other cases regarding his expertise.[3]  Finally,

Defendant asserts that Eagar's opinions with respect to defective design and warnings are

outside the scope of his expertise and inconsistent with his own testimony regarding his

expertise.[4]

Defendant objects to the reliability of Eagar's opinion that the energy generated by

an indirect lightning strike was sufficient to perforate the TracPipe and cause the fire,

because his report contains no data regarding indirect lightning strikes.  Similarly,

Defendant objects to Eagar's testimony that he can discern whether the holes in the CSST

were caused by lightning, because Eagar also states that metallurgical analysis alone

cannot offer such answers.

---

[3]  *See, e.g.*, Eagar Dep. (*Sauer*) at 27:15-22 ("I am not an expert on lightning. I do not
profess to be an expert on lightning."); Eagar Dep. (*Holes*) at 30:11-19 ("I am not an
expert on lightning."); Eagar Dep. (*Becnel*) at 84:3-19 ("I have not pretended to be a
lightening [sic] expert here. I am a metallurgi[st] and am an arc physicist, but I am not
specifically a lightening [sic] expert."); Eagar testified at his deposition in the *Karlin* case
that he does "not hold [him]self out as an origin and cause expert."  Eagar testified at his
deposition in the *Sauer* case that he does "not hold [him]self out as an expert in the
design of corrugated stainless steel systems" or in the installation of CSST.

[4]  Eagar testified at his deposition in the *Sauer* case that he does "not hold [him]self out
as an expert in the design of corrugated stainless steel systems" or in the installation of
CSST.  Eagar Dep. (*Sauer*) at 197:6-22.  Eagar testified at his deposition in the *Grimm*
case that he does not "hold [him]self out as an expert in warnings."  Eagar Dep. (*Grimm*)
at 82:24-83:6.

ADD-12

Defendant also argues that Eagar offers no basis from which the Court could conclude that his credentials and training as a metallurgist and arc physicist qualify him to offer opinions regarding product design and the efficacy of bonding and warnings. Defendant notes that, in the context of other litigation involving TracPipe, Eagar has testified that he is not an expert with respect to product design or warnings, and that another federal court excluded his opinions with respect to these issues. *See Cincinnati Ins. Co. v. Omega Flex, Inc*., No. 3:10-CV-00670M, 2013 WL 2120322 (W.D. Ky. May 15, 2013).

Pursuant to Rule 702, a court's primary consideration as to the admission of expert testimony is whether such testimony will assist the trier of fact.  Upon review of the record before it, the Court concludes that Plaintiff has not shown by a preponderance of the evidence that Eagar can qualify as an expert with respect to product design and product warnings to provide a reliable basis for his opinions on these issues.  Eagar has specifically disavowed such expertise and his areas of expertise bear no more than a remote relationship to product design and warnings.  In the absence of specific expertise on these issues, his testimony will provide little assistance to the jury.  *Cincinnati Ins. Co.*, 2013 WL 2120322, at *1 (refusing to reconsider a previous order holding that "Dr. Eagar may not opine generally as to the standard of care of manufacturers or specifically as to Omega Flex's conduct . . . [because s]uch opinions are outside his field of expertise, metallurgy."); *see also Barrett*, 606 F.3d at 980.

In addition, Eagar's proposed testimony on the issue of the adequacy of the warnings presents a real risk of invading the province of the jury by directing its

- 13 -

ADD-13

determination on an ultimate issue.  *See Rottlund*, 452 F.3d at 732; *Robertson,* 148 F.3d

at 908 (affirming exclusion of expert's opinion in light of his lack of qualifications

regarding warnings and his failure to systematically consider the problems inherent in

devising a warning).  Moreover, the proposed testimony as to design and warnings may

run afoul of Fed. R. Evid. 403.  The jury might afford it greater weight than warranted

because "[t]he shroud of his [irrelevant] expertise [in another area] will likely elevate his

opinion above a mere observation to a legal conclusion."  *Cincinnati Ins. Co.*, 2013 WL

2120322, at *2; *Hayes v. MTD Prod., Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007)

(holding that legal conclusions are reserved for the jury).  For these reasons, Eagar may

not offer opinion testimony relating to product design and warnings.

　　　　With respect to Eagar's opinions regarding fire causation and the efficacy of

bonding, the Court concludes that his metallurgical and arc physics expertise is closely

and logically related to these issues and qualifies him to opine with respect to these

issues.  The fire causation and bonding questions here hinge upon the possible effects of

an electrical arc on a metal, CSST, and the measures required to alter the conductivity of

that metal.  Therefore, the Court is satisfied that Eagar's claimed areas of expertise, as

established by a preponderance of the evidence on the record, make him a reliable

witness with respect to these issues.

　　　　Defendant asserts that *Pro Service Automotive, L.L.C. v. Lenan Corp*., 469 F.3d

1210 (8th Cir. 2006), requires exclusion of Eagar's testimony regarding fire causation

and bonding because "there is too great an analytical gap between the data and his

opinion."  469 F.3d at 1215-16.  But the holding in *Pro Service* is readily distinguishable.

ADD-14

There, the proposed expert offered a causation opinion without performing any testing, and "only vague theorizing based on general principles."  *Id.*  By contrast, Eagar has performed tests relating the response of CSST to various voltage levels and to the ignition of gas at the resulting temperatures.  Defendant's argument that Eagar's opinion is unreliable because it believes he drew the wrong conclusion from scientifically accepted testing goes to the weight and credibility of his testimony, not its reliability.  *Compare Pro Serv. Auto., L.L.C.*, 469 F. 3d at 12 *with White v. Cooper Indus., Inc.,* No. Civ. 06-4272-KES, 2009 WL 234347, *6-7 (D.S.D., Jan. 29, 2009).

Similarly, the other flaws Defendant identifies in Eagar's data, theories and testing methods go to the weight rather than the admissibility of that evidence and should not be excluded on this basis.  *See Kudabeck v. Kroger Co.*, 338 F.3d 856, 862 (8th Cir. 2003).  Defendant will have the opportunity on cross-examination to challenge Eagar's opinions and the underlying justification for them.  *Id.*  (holding that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").  Therefore, the Court concludes that Eagar may testify as to the matters within his areas of expertise – metallurgy and arc physics – and may offer his opinion regarding fire causation in relation to metallurgy and arc physics.  Testimony outside of these areas related to product design and warnings will be excluded.

ADD-15

C.  **Opinions of Harri Kytomaa, Ph.D.**

Defendant's expert, Harri Kytomaa, Ph.D., is a mechanical engineer and "fire

causation specialist."  He is to testify with respect to fire causation, but the thrust of his

opinion is to demonstrate the flaws in Eagar's causation hypothesis.

Kytomaa asserts that the energy generated by an indirect lightning strike is

insufficient to perforate the TracPipe CSST and ignite escaping propane.  He asserts that

propane gas escaping from the perforations in the CSST could not have been ignited by

this lightning arcing event and that even if such ignition occurred, the force of the

propane flowing through the perforations would have extinguished any spark or fire.

Kytomaa opines that an arcing event energized the CSST but did not melt the

CSST at this time.  He contends that energy from the lightning strike arced off the CSST

to another unknown conductive material and ignited some non-specific combustible

material, such as wood joists, gypsum board, sawdust or dander.  This unidentified "first

fuel" ignited and sustained the fire, which spread.  Kytomaa claims that as the fire spread

it attacked an aluminum feeder wire that was extremely close to the CSST, burning away

the insulation on the electrical wiring, and triggering a second electrical arc between the

CSST and the wiring.  Kytomaa posits that this second arc, powered by the home's

electrical system, was capable of perforating the CSST, causing gas to escape into the on-

going fire.

Plaintiff seeks to exclude certain of Kytomaa's opinions as speculative, and not

based on physical evidence, appropriate testing or reliable principles, and methods.

ADD-16

Plaintiff also asserts that Kytomaa's opinions are not derived from any recognized methodology and directly contradict accepted scientific principles.

Applying the principles set forth above, the Court concludes that Kytomaa's testimony with respect to causation should be permitted.  His expertise in fire causation and electrical engineering has been duly demonstrated and his opinions regarding the cause of the fire are supported by scientific literature and the testing he performed.

Plaintiff's assertions regarding the reliability of Kytomaa's methods and testing are also best addressed on cross examination because they go to the weight rather than the reliability of his opinion.  Plaintiff's objections are largely conclusory and unsupported by examples from Kytomaa's report or scientific authority challenging his methods or data.  Therefore, upon review of the report, the Court cannot say that Kytomaa's theory is unsupported by scientific methodology.  Indeed, a review of his report indicates numerous references to peer reviewed literature as a basis for his data and tests.  Therefore Kytomaa's testimony with respect to the cause of the fire will be permitted.

### III.  Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), the district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In the face of a properly supported summary judgment motion, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

- 17 -

ADD-17

242, 250 (1986); Fed. R. Civ. P. 56(e)(2).  That is, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  "If the nonmoving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

"By its terms, Rule 56 provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*  Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

### A.  <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff moves for summary judgment asserting that because the jury in a prior suit, *Tincher v. Omega Flex, Inc.*, No. 2008-00974CA (Pa. Commw. Oct. 20, 2010), determined that the TracPipe CSST at issue there was defective, Defendant is collaterally estopped from asserting otherwise in this lawsuit.

In *Tincher*, Terrence and Judith Tincher owned a residence in Chester County, Pennsylvania.  The Tincher residence was constructed in 1999 and equipped with CSST

- 18 -

ADD-18

manufactured by Defendant under the brand name TracPipe, which was used to transport natural gas to appliances within the home.  On June 20, 2007, a thunderstorm moved through the Chester County area, accompanied by rain and lightning.  During the storm, a lightning discharge struck at or near the residence; a fire began, and the residence was severely damaged by heat, smoke and water as a result of the fire.  The Tinchers filed suit against Defendant and following an eight-day trial that commenced on October 11, 2010, a jury of twelve found Defendant's TracPipe CSST product defective.  A judgment against Defendant arising out of the Tincher fire was filed in the Chester County, Pennsylvania, Court of Common Pleas.

Under the doctrine of collateral estoppel, or issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, that decision precludes relitigation of the issue in a suit in a different cause of action involving the same parties or privities.  *Kinsky v. 154 Land Co.*, 371 S.W.3d 108 (Mo. Ct. App. 2012) (citing *San Remo Hotel, L.P., v. City & Cnty. of San Francisco, Cal.,* 545 U.S. 323, 336 n.16 (2005)); *see also Shahan v. Shahan*, 988 S.W.2d 529, 532-33 (Mo. 1999).  Collateral estoppel may be applied if:  (1) the issue decided in the first action is identical to the issue in the second; (2) the prior litigation resulted in a judgment on the merits; (3) the party to be estopped was a party or in privity with a party to the prior adjudication; and (4) the party to the prior adjudication had a full and fair opportunity to litigate the issue in the prior suit.  *Shahan,* 988 S.W. 2d at 532-33.

Defendant opposes the application of offensive collateral estoppel and upon consideration of the points set forth below, the Court concludes that it should not be

- 19 -

ADD-19

applied here.  First, the issues in *Tincher* and this case, while similar, are not identical and the factual differences between the two counsel against the application of collateral estoppel.  In addition, Pennsylvania law, as applied in *Tincher*, differs from Missouri law regarding principles of product liability and failure to warn.  Further, the presiding judge in *Tincher* specifically opined that the verdict should not be deemed to have preclusive effect in other cases involving TracPipe and Omega Flex.  Finally, Plaintiff offers no authority for the proposition that one jury verdict against a defendant forever decides the issue of that defendant's liability with respect to all other similar circumstances involving other plaintiffs in other jurisdictions.  When asked at the hearing whether such authority exists, Plaintiff admitted that none did.  For these reasons, the Court will deny Plaintiff's motion for summary judgment on the basis of offensive collateral estoppel.

**B.  Defendant's Motion for Summary Judgment**

1.  Evidence of Causation

Defendant first asserts that Plaintiff's claims fail in their entirety because it has not produced admissible evidence of (1) causation, (2) defective design, or (3) inadequate warnings.  Missouri law requires a Plaintiff to establish "causation" in all product liability claims – *i.e.*, that the defendant's product caused the Plaintiff's injury.  *See Pro Serv. Auto.,* 469 F.3d at 1214.

In light of the Court's ruling on the *Daubert* motion relating to Eagar's testimony, Defendant's assertion that Plaintiff has produced no admissible causation evidence is simply incorrect.  In addition, Plaintiff has disclosed four other experts whose expertise relates not only to the origin and cause of the fire but also to product design and the

ADD-20

efficacy of bonding and warnings.  These witnesses will presumably be available to offer

testimony on these issues.  Therefore, the Court cannot accept Defendant's contention

that there is no admissible evidence with respect to the essential issues of causation,

design, and warnings.  As such, Defendant's motion for summary judgment on this

ground fails.

       2. <u>Voluntary Payment Doctrine</u>

      Defendant also moves for summary judgment contending that the plain language

of the insurance policy expressly excludes coverage for the Kosteckis' loss and that

Plaintiff's voluntary payment to them despite this exclusion precludes Plaintiff's

subrogation claim under Missouri law.

      In support of this position, Defendant references the language of the policy in

Section B.1.e that excludes recovery for "loss caused by or resulting from . . . inherent

vice, hidden or latent defect or any quality in property that causes it to damage or destroy

itself."  Defendant also contends that Section B.3.c, which provides that Plaintiff does

"not cover loss caused by". . . "faulty, inadequate or defective" . . ."design,

specifications, workmanship, repair, construction, renovation, remodeling, grading,

compaction," or "materials used in repair, construction, renovation or remodeling,"

excludes coverage for the Kosteckis' loss.  Defendant asserts that Plaintiff's allegations

regarding the defective nature of the TracPipe fit these exclusions, and therefore, that

Plaintiff had no obligation under the policy to cover the Kosteckis' loss.

      Plaintiff responds that it properly extended coverage pursuant to policy language

defining an "occurrence," because the policy language does not expressly exclude from

ADD-21

coverage a loss arising from a lightning strike and resultant fire.  Plaintiff further asserts

that that even if the "inherent vice or defective materials" provision applies to the

Kostseckis' loss, the policy as quoted above provides coverage for damage resulting from

"inherent vice or defective materials" unless the resulting loss is itself caused by an

"inherent vice or defective materials."  (Doc. No. 56, at 1.)  Plaintiff contends that even if

it had been known or presumed that the TracPipe was defective, Plaintiff would have

been required to cover the resulting loss caused by fire, smoke, and water damage and

therefore, that its payment under the policy was not voluntary.  In the alternative, Plaintiff

asserts that it is an assignee rather than a subrogee of its insureds and therefore, that the

voluntary payment doctrine does not apply here.

 The voluntary payment doctrine, "'well established [under Missouri law, provides]

that a person who voluntarily pays money with full knowledge of all the facts in the case,

and in the absence of fraud and duress, cannot recover it back, though the payment is

made without a sufficient consideration, and under protest.'"  *Huch v. Charter*

*Commc'ns*, *Inc.*, 290 S.W.3d 721, 726 (Mo. 2009) (quoting *Am. Motorists Ins. Co. v.*

*Schrock*, 447 S.W.2d 809, 812 (Mo. Ct. App. 1969)).  The doctrine applies to subrogation

claims under insurance policies.  But where there is a dispute regarding coverage, courts

have held that an insurer who pays its insured may still bring a subrogation action if it

made its payment in good faith as a result of a valid dispute over unclear policy language

or relevant facts.  *See id.*; *Shrock*, 447 S.W.2d at 812.; *see also Childers v. E. Foam*

*Prods., Inc.*, 94 F. R. D. 53, 56-57 (N.D. Ga. 1982) (stating that "'where an insurer makes

payments for only part of rather than all of its insured's loss, the insurer is subrogated *pro*

- 22 -

ADD-22

*tanto* to the right of its insured and the insured retains that part of the claim in excess of the insurer's payment.  A necessary corollary is that the insurer retains a part interest in its insured's claim against the tortfeasor, to the extent that the insurer has compensated the insured for his loss.'") (quoting *Lindsey v. Samoluk*, 219 S.E.2d 464, 466 (1975), *rev'd on other grounds*, 223 S.E.2d 147 (1976)).

With respect to the language of the policy, the Court notes that the parties' differing interpretations belie Defendant's assertion that the plain language of the policy excludes coverage and renders Plaintiff's payment voluntary.  In addition, each of the alternative policy interpretations Plaintiff suggests is plausible and required it to cover the Kosteckis' loss.  Moreover, there is no indication that Plaintiff did not act in good faith when it provided coverage for the loss.  Finally, even if the Court were to assume that the "inherent vice or defect" exclusion applied, Defendant has not demonstrated that Plaintiff's coverage of the Kosteckis' loss would be voluntary, because there is no indication in the record that when payment was made Plaintiff had full knowledge of the facts relating to the alleged role of TracPipe in causing the loss.  *Id.*

The Court concludes that the alternative bases for coverage offered by Plaintiff are reasonable and therefore, that Plaintiff had a contractual obligation to indemnify its insureds under the policy.  In addition, the payment was made in the absence of the full knowledge regarding the fire's causation.  Therefore, Plaintiff did not "volunteer" or make payment for a loss it was not obliged to cover, and the voluntary payment doctrine does not apply to extinguish Plaintiff's right to subrogation or assignment under the policy.  *See Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. 2002) (holding that the doctrine

ADD-23

will extinguish a subrogation claim when the subrogee is "a mere volunteer who pays the

debt of another without any assignment or agreement for subrogation, and who is under

no legal obligation to make the payment, and is not compelled to do so for the

preservation of any rights or property of his own")

In light of this determination, the Court need not reach the issue of whether the

agreement between Plaintiff and its insureds is in the nature of a subrogation or an

assignment.  Accordingly, Defendant's motion for summary judgment on the basis of the

voluntary payment doctrine also is denied.

3.  <u>Bonding and Unintended Use</u>

Defendant moves for summary judgment on Plaintiff's negligent design and strict

liability product defect claims asserting that because the undisputed facts demonstrate

that the TracPipe was not properly installed at the Kostecki residence, Plaintiff cannot

show as required that the product was put to a "reasonably anticipated use."  *Keener v.*

*Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 366 (Mo. 1969).  Defendant further asserts that

the failure of the Kosteckis' contractor to bond and ground the TracPipe system as

required by the product instructions constitutes a misuse of the product that was not

reasonably foreseeable and precludes any finding of proximate causation on either of

these claims.

Plaintiff responds that summary judgment is not warranted on the negligent design

and strict liability product defect claims because there are material questions of fact

regarding the clarity and efficacy of the instructions for the use of TracPipe.  Specifically,

Plaintiff notes that the question of whether the NEC-approved grounding method used in

- 24 -

ADD-24

the Kostecki home, a three pronged plug and a 14 GW wire, complies with the instructions in the 2001 D&I Guide, or constitutes a reasonably foreseeable use of the product.

With respect to the strict liability product defect claim, Missouri law requires Plaintiff to prove that at the time of sale, the product was in a defective condition when put to a "reasonably anticipated use," and that the Plaintiff was damaged as a result of the product's defective condition. *Keener,* 445 S.W.2d at 366; *Menz v. New Holland N. Am., Inc.*, 460 F. Supp. 2d 1050, 1054 (E.D. Mo. 2006). "[A] supplier is not liable when it delivers a product in a safe condition but subsequent mishandling renders the product defective." *Stanger v. Smith & Nephew, Inc.*, 401 F. Supp. 2d 974, 979 (E.D. Mo. 2005).

Upon review of the record the Court agrees that there is a material dispute of fact with respect to the clarity of the installation instructions, whether the grounding method used could be said to comply with the 2001 D&I Guide instructions, and whether TracPipe was unreasonably dangerous or defective even when bonded according to the instructions in the 2001 D&I Guide instructions. Therefore, this portion of Defendant's motion for summary judgment will be denied. *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 298-99 (8th Cir. 1996) (affirming summary judgment where accident was caused by mechanic's mishandling of tire, not design defect).

4. <u>Adequacy of Warnings</u>

Defendant also moves for summary judgment on Plaintiff's failure-to-warn strict liability claim. Defendant asserts that the claim fails because Plaintiff has produced no evidence demonstrating that TracPipe's warning was inadequate, that the Kosteckis'

contractor lacked relevant information, or that that the allegedly inadequate warning directly "caused" the damage or would have altered the Kostecki contractor's behavior.

Plaintiff responds that the efficacy of bonding to prevent an incident such as this one is disputed, and therefore that the question of whether heeding the warning would have prevented the fire is disputed.

Under Missouri law, "[t]he elements of a cause of action for strict liability under a failure to warn theory are as follows: (1) defendant sold the product in question in the course of his business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) plaintiff was damaged as a direct result of the product being sold without an adequate warning." *Cole v. Goodyear Tire & Rubber Co.*, 967 S.W.2d 176, 183 (Mo. Ct. App. 1998) (internal citation omitted).

In addition, there are two distinct causation requirements for a failure to warn claim: "(1) the product for which there was no warning must have caused plaintiff's injuries; and (2) plaintiff must show a warning would have altered his behavior." *Id.* at 184 (citing *Arnold v. Ingersoll-Rand Co.*, 834 S.W.2d 192, 194 (Mo. 1992)). Summary judgment properly is entered if either causation element is lacking. *Mothershead v. Greenbriar Country Club, Inc.,* 994 S.W.2d 80, 89 (Mo. Ct. App. 1999) (citation omitted).

With respect to the second element, in order to overcome the presumption that warnings are heeded, there must be "sufficient evidence from which a jury could find

- 26 -

ADD-26

[that] the [recipient of the warning] did not already know of the specific danger

involved." *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1112 (8th Cir. 2007); *see*

*also Arnold*, 834 S.W.2d at 194 (holding that "[a]s causation is a required element of the

plaintiff's case [and] the burden is on plaintiff to show that lack of knowledge").  "Where

warning is given, the seller may reasonably assume that it will be read and heeded; and a

product bearing such a warning, which is safe for use if it is followed, is not in defective

condition, nor is it unreasonably dangerous."  RESTATEMENT (SECOND) OF TORTS

§ 402A.

Finally, in a case such as this, involving technical and complex processes whose

properties are outside the common knowledge or experience of a jury, "[a] failure to warn

claim requires admissible expert testimony that additional or other warnings might have

altered the behavior of the plaintiff." *Davidson v. Besser Co.,* 70 F. Supp. 2d 1020, 1023

(E.D. Mo. 1999) (citation omitted); s*ee also Bryant v. Laiko Int'l Co., Inc.,*

No.1:05CV00161, 2006 WL 2788520 at *10 (E.D. Mo. Sept. 26, 2006).

Plaintiff has not identified the contractor responsible for the TracPipe installation

in the Kostecki home, and the Plaintiff's expert, Eagar, will not be permitted to testify

with respect to the adequacy of the warnings contained in the 2001 D&I Guide.  Because

the installing contractor has not been identified, there is no evidence on the record from

which the jury could conclude that the installer did not already know of the danger

associated with TracPipe or that a warning different than that included in the 2001 D&I

Guide would have altered the installer's actions.  *See Mothershead,* 994 S.W.2d at 89.

Therefore, the Court concludes that Defendant's motion for summary judgment with

- 27 -

ADD-27

respect to the strict liability failure to warn claim should be granted because Plaintiff has offered no evidence with respect to this required element of its claim. *See, e.g., Gallatin v. Delta Int'l Mach. Corp.,* No. 05-4416-CV-C-NKL, 2007 WL 188449, at *3 (W.D. Mo. Jan. 23, 2007) (granting summary judgment where the plaintiff produced no evidence that "his injuries were proximately caused by any defect in or lack of warning on [the defendant's] table saw as opposed to his own misuse of the equipment"); *Menz*, 507 F.3d at 1112 (affirming a grant of summary judgment where machine operator was aware of dangers associated with tractor).

Without this critical, threshold information, Plaintiff's failure-to-warn claim fails as a matter of law. *Morton v. Homelite, Inc.*, 183 F.R.D. 657, 659 (W.D. Mo. 1998) (holding that plaintiff was precluded from pursuing the failure-to-warn claim, where plaintiff presented no evidence that "a warning would have communicated any additional information").

5. Express and Implied Warranty Claims

Defendant asserts that Plaintiff's express and implied warranty claims are barred by Defendant's explicit disclaimer of warranties in the Suggested Price List and Missouri's four year statute of limitations.  Plaintiff asserts that the warranty disclaimer in the Suggested Price List is ineffective, because there is no evidence that the Kosteckis ever received or read the Suggested Price List or that it ever became part of a contract between Defendant and the Kosteckis.  Neither party asserts a basis for express or implied warranty arising from a document other than the Suggested Price List.

- 28 -

ADD-28

It is undisputed that Defendant's Suggested Price List contained language stating that the TracPipe was accompanied by a limited one-year warranty that expired before the Kostecki fire; expressly disclaimed consequential damages of the sort Plaintiff seeks here; expressly voided the limited warranty in situations where the product was subjected to "misuse or neglect" or was not "installed, maintained or operated in accordance with the TracPipe Design and Installation Guide"; and expressly disclaimed all warranties other than the limited one-year warranty, whether express or implied. *See* Defendant's Suggested Price List.  However, Plaintiff correctly asserts that there is no evidence before the Court that the Suggested Price List was ever presented to the Kosteckis, much less that it constitutes a contract between the Kosteckis and Defendant.

Under Missouri law, a document like the Suggested Price List, such as " a brochure, catalog, or advertisement," may constitute part of an express warranty. *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 86 (Mo. Ct. App. 2011).  However, a party claiming protection under such an express warranty must have seen and the catalog, advertisement, or brochure or other document.  *Id.*; *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 906-07 (W.D. Mo. 2009) (collecting case law for the proposition that for a representation to become part of the bargain, it must be known to all parties to that bargain and if a party is not aware of the statement, that party cannot claim it was part of the bargain).  In light of this principle, the Court concludes that Defendant's motion for summary judgment on the express warranty claims should be granted because there is no evidence in the record that the Kosteckis received or read the

ADD-29

Suggested Price List or that it became part of any contract with them.  *Hope*, 353 S.W.3d at 86.

Even if the Court were to presume that the Kosteckis had read the Suggested Price List, the disclaimer of warranties in that document is effective to bar a claim based on express warranty.  *Verbrugge v. ABC Seamless Steel Siding, Inc*., 157 S.W.3d 298, (Mo. Ct. App. 2005); *Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc.,* 932 S.W.2d 877, 879 (Mo. Ct. App. 1996).  A manufacturer may expressly disclaim liability via prominent markings on packaging, brochures, or other marketing materials.  *Groppel Co., Inc. v. U.S. Gypsum Co*., 616 S.W.2d 49, 61 n. 13 (Mo. Ct. App.1981).  The language of the Suggested Price List effectively disclaimed Defendant's liability for any express warranties which were made to the Kosteckis and hence to Plaintiff.  *Id.*

Turning to the implied warranty claim, Mo. Rev. Stat. § 400.2–314 creates an implied warranty of merchantability, under which the seller warrants that goods are at least "fit for the ordinary purposes for which such goods are used."  *Hope*, 353 S.W.3d at 89-90 (Mo. Ct. App. 2011).  To prove a claim for breach of implied warranty of merchantability in Missouri, a plaintiff must show:

> (1)  That a merchant sold goods, (2) which were not "merchantable" at the time of the sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury.

*Id.* (internal quotation omitted).

Assuming without deciding that these elements could be established here, the question becomes who may claim the protection of that warranty and what is the effect of

- 30 -

ADD-30

its disclaimer.  A manufacturer's disclaimer of warranties differs conceptually from a reseller's disclaimer of warranty.  *Karr-Bick Kitchens & Bath, Inc.*, 932 S.W.2d at 879. "When the manufacturer sells the goods to a dealer who resells the goods to the ultimate purchaser, the latter cannot sue the manufacturer if the manufacturer ha[s] made a [legally effective ] disclaimer of warranties."  *Id*.  The manufacturer's disclaimer of warranties does not "run with the goods" and does not protect any subsequent seller from liability under an implied warranty.  *Id.*

Defendant contends and the Court agrees that it effectively disclaimed any implied warranty that would have attended its sale of the TracPipe to a dealer or installer and therefore that no implied warranty extended to the Kosteckis.  Under Missouri law, Defendant's implied warranty extends to the dealer or installer who purchased from Defendant but it does not extend to the Kosteckis and hence to Plaintiff.  *Id.*

In addition*, even if the implied warranty did extend to the subsequent purchasers, the language of the Suggested Price List effectively disclaims the implied warranty under Missouri law.  *Id.*  The disclaimer language complies with the requirements of Mo. Rev. Stat. § 400.2A–214(2) as it was in writing, was conspicuous, and mentions merchantability.  *See, e.g., Graham Const. Serv., Inc. v. Hammer & Steel, Inc.*, No.:11CV1316JCH, 2012 WL5438994, at *7 (E.D. Mo. Nov.7, 2012) (dismissing implied warranty claim based on disclaimer in lease agreement.)

Thus, Plaintiff's claims regarding implied warranties fail as a matter of law, and Defendant's motion for summary judgment on this ground is granted.  In light of this determination, the Court need not reach the statute of limitations question.

ADD-31

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to exclude the testimony of Plaintiff's expert, Dr. Thomas Eagar, is **GRANTED in part** and **DENIED in part**. (Doc. No. 51.)

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Doc. No. 55) is **GRANTED in part** and **DENIED in part**, as follows:

1. Defendant's motion for summary judgment is **DENIED** with respect to Plaintiff's claims for negligent design and strict liability, defective product theory.

2. Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's claims for strict liability, failure to warn theory, and breach of express and implied warranties.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment is **DENIED**.  (Doc. No. 59.)

**IT IS FURTHER ORDERED** that Plaintiff's motion to exclude the testimony of Defendant's expert, Dr. Harri Kytomaa, is **DENIED**.  (Doc. No. 63.)


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of June, 2013.

ADD-32

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN AUTOMOBILE | ) | |
| INSURANCE COMPANY, | ) | |
| as assignee of FRED AND | ) | |
| ADRIENNE KOSTECKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:11CV00305 AGF |
| | ) | |
| OMEGA FLEX,INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM REGARDING DEFENDANT'S MOTION IN LMINE NO. 4**

Now before the Court is Defendant's Motion in Limine No. 4.  (Doc. No. 117.)  In

that motion Defendant asserts that the Court's earlier *Daubert* ruling (Doc. No. 96)

prohibiting Plaintiff's sole design defect expert, Dr. Thomas Eagar, from offering

opinions with respect to the alleged defective design of Defendant's product, TracPipe,

mandates the entry of summary judgment for Defendant on Plaintiff's strict liability,

defective design claim.  Upon review of the parties' filings and the argument presented at

the June 27, 2013 hearing, the Court will deny that portion of Defendant's Motion in

Limine No. 4 relating to this issue.

**Applicable Law**

Under Missouri law, in order to prevail on a strict liability claim for defective

design, a plaintiff must establish that (1) the defendant sold a product in question in the

course of its business; (2) the product was then in a defective condition, unreasonably

dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold.  *See Columbia Mut. Ins. Co. v. Epstein*, 239 S.W.3d 667, 671 (Mo. Ct. App. 2007); *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969); Restatement (Second) of Torts § 402A.

With respect to the fourth element of the claim, that the plaintiff was damaged as a direct result of a defective condition that existed when the product was sold, "'absolute certainty of causation is not required . . . and . . . probative facts' established by circumstantial evidence and pointing to the desired conclusion with enough certainty to be reasonable and probable is sufficient." *Bass v. General Motors Corp*., 150 F.3d 842, 850 (8th Cir. 1998) (quoting *Duke v. Gulf & Western Mfg. Co.*, 660 S.W.2d 404, 410 n. 3 (Mo. Ct. App.1983)); *see also Klein v. General Elec. Co*., 714 S.W.2d 896, 900 (Mo. Ct. App.1986) (testimony of expert that product defect was probable cause of incident may constitute substantial evidence).

"[E]xpert testimony is not necessarily required" on the issue of design defect.  *Pro Service Automotive, L.L.C. v. Lenan Corp*., 469 F.3d 1210, 1214 (8th Cir. 2006) (citing *Tune v. Synergy Gas Corp*., 883 S.W.2d 10, 14 (Mo. 1994)); *see also McGeoghegan v. SPX Dock Products, Inc.*, No. 4:04–CV–1270 CEJ, 2006 WL 416088, at *2 (E.D.Mo. Feb. 21, 2006); *Rauscher v. General Motors*, 905 S.W.2d 158, 160 (Mo. Ct. App. 1995); *Aetna Cas. and Sur. Co. v. General Elec. Co.,* 758 F.2d 319, 322 (8th Cir. 1985).  "The existence of a defect may be inferred from circumstantial evidence with or without the aid of an expert witness." *Donovan v. Mishy Sportswear, Inc*., 200 F.Supp. 2d 1103,

- 2 -

ADD-34

1107 (E.D. Mo. 2001); *see also Klein v. General Elec. Co*., 714 S.W.2d 896, 900 (Mo. Ct. App. 1986).

To determine whether the case is submissible in the absence of expert testimony, "the Court must examine the inferences to be drawn and determine whether those inferences are reasonably probable, without resorting to guesswork or speculation." *Donovan*, 200 F. Supp. 2d at 1107; *see also Patterson v. Foster Forbes Glass Co*., 674 S.W.2d 599, 603 (Mo. Ct. App. 1984); *Hale v. Advance Abrasives Company*, 520 S.W.2d 656, 659 (Mo. Ct. App.1975) (holding that a product defect case was not submissible where evidence pointed equally to a cause for which defendants were responsible and to one for which they were not responsible).  A finding of defect cannot rest on "conjecture or speculation."  *Crump v. MacNaught P.T.Y. Ltd.*, 743 S.W.2d 532, 534 (Mo. Ct. App. 1987).  Expert testimony will be "necessary where 'the lay jury [does] not possess the experience or knowledge of the subject matter sufficient to enable them to reach an intelligent opinion without help.'"  *Pro Service Automotive, L.L.C.*, 469 F.3d at 1214 (quoting *Siebern v. Missouri-Illinois Tractor & Equip. Co*., 711 S.W.2d 935, 939 (Mo. Ct. App. 1986)).

**Discussion**

Defendant asserts that in this case a jury would not possess the necessary experience or knowledge to address the complexities involved in understanding the role of TracPipe, if any, in causing the fire and attendant damage.  Therefore, Defendant contends that expert testimony on the issue of defective design is required for Plaintiff to

- 3 -

ADD-35

prove its case and that in the absence of Dr. Eagar's opinion regarding defective design of the product the claim cannot survive summary judgment.

As stated at the hearing, on this record, the Court cannot determine that expert testimony is necessarily required.  As Plaintiff notes, TracPipe is a relatively straightforward product with simple design components – CSST pipe and plastic sheathing.  It has no moving parts and no complex mechanisms or mechanical interactions.  Courts in this Circuit have found that expert testimony was not required in product liability cases involving products far more complex than TracPipe.  *Compare McGeoghegan v. SPX Dock Products, Inc.*, No. 4:04–CV–1270 CEJ, 2006 WL 416088, at *2 (E.D .Mo. Feb. 21, 2006) (concluding that a dock leveler was not so complex as to require expert testimony regarding defect where the failure of the leveler's maintenance strut to support a platform was alleged to have caused plaintiff's injury) *with Shaffer v. Amada America, Inc.,* 335 F.Supp.2d 992, 998 (E.D. Mo. 2003) (concluding that expert testimony was necessary to establish defect in a press brake machine where several causes for the plaintiff's injury had been identified).  Nonetheless, the Court cannot definitively determine at this stage of the proceedings whether the defect and causation issues here will prove more complex and require expert testimony for proof of a submissible case.

The Court is satisfied that as a general rule expert testimony is not mandatory in a case such as this and that Defendant is not entitled to summary judgment on the defective design claim.  Whether Plaintiff will be able to make a submissible case is a matter to be assessed as the matter progresses through Plaintiff's case-in-chief.

- 4 -

ADD-36

Defendant attempts to distinguish the cases supporting a determination that expert testimony is not mandatory on the ground that they are failure–to–warn rather than product defect cases.  But the Court notes that "[t]he existence of a defect may be inferred from circumstantial evidence with or without the aid of an expert witness." *Donovan,* 200 F. Supp.2d at 1107.  In addition, Defendant's assertion that circumstantial evidence of defect is only permitted in *res ipsa loquitur* cases, *see, e.g.*, *Patterson*, 674 S.W.2d at 601 (Mo. Ct. App. 1984) (exploding baby bottle), is without merit.  *See*, *Donovan,* 200 F. Supp.2d at 1107; *McGeoghegan*, 2006 WL 416088, at *2.

Moreover, as the Court previously noted, the exclusion of Dr. Eagar's opinion regarding design defect does not leave the Plaintiff without expert testimony to prove its case.  Experts qualified and designated to opine on such issues as fire causation and origination, electrical faults and malfunctions, bonding and grounding mechanisms and the requirements of the National Electric Code for the installation of products such as TracPipe, to name a few, are expected to testify to assist the jury in making its determination.  In addition, Dr. Eagar may still offer expert opinions in the areas of metallurgy and arc physics where the Court found him qualified.  Expert testimony in these areas may sufficiently assist the jury in determining whether a defect in the design of TracPipe caused the damage here.

Finally, this is not a case where the expert opinion as to defect is the only evidence, lay or expert, regarding design defect.  Because the issue of defect may be inferred from circumstantial evidence, the absence of an opinion on the ultimate issue of defect is not fatal to Plaintiff's claim.

- 5 -

ADD-37

For these reasons, the Court concludes that Defendant's motion in limine No. 4. should be denied insofar as it asserts that Plaintiff may not proceed on its design defect claim without an expert witness to opine on the defective nature of the product at issue. The Court will carefully assess the evidence at trial, and determine based on the evidence, whether Plaintiff can establish a submissible case of defective design with testimony by an expert regarding design defect.

_Audrey G. Fleissig_

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of June, 2013.

- 6 -

ADD-38

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AMERICAN AUTOMOBILE           )
INSURANCE COMPANY, as assignee of  )
FRED and ADRIENNE KOSTECKI,   )
                              )
            Plaintiff,        )
                              )
      v.                      )          Case No. 4:11CV00305 AGF
                              )
OMEGA FLEX,INC.,              )
                              )
            Defendant.        )

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff American Automobile Insurance Company ("Plaintiff") brought this

action against Defendant Omega Flex, Inc. ("Defendant") to recover funds Plaintiff paid

its insureds, Fred and Adrienne Kostecki, following a lightning strike and fire at the

Kostecki residence in High Ridge, Missouri.  Plaintiff asserts that TracPipe, a corrugated

stainless steel tubing ("CSST"), manufactured and sold by Defendant, and used to

transport propane into the residence was defective and caused the fire.

Plaintiff presented two theories of liability to the jury:  negligent design and strict

liability under Missouri Revised Statute § 537.760.  *See* Doc. No. 182.  The trial of this

matter resulted in a jury verdict in favor of Defendant and against Plaintiff on both

claims.

Now before the Court is Plaintiff's motion for new trial pursuant to Federal Rule

of Civil Procedure 59(a).  Plaintiff asserts that the Court's exclusion of certain opinion

testimony offered by Plaintiff's expert and its inclusion of opinion testimony of

ADD-39

Defendant's expert substantially prejudiced the outcome of the trial.  For the reasons set forth below, Plaintiff's motion for new trial is denied.

## BACKGROUND

Prior to trial each party moved to strike the opinion testimony of the other's expert, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  *See* Doc. Nos. 51 & 63.  The *Daubert* motions were fully briefed and, at the parties' request, the Court conducted a hearing on those motions.[1] Upon consideration of the parties' briefs and the testimony and argument presented at the hearing, the Court ruled that Plaintiff's expert, Thomas Eagar, Ph.D., was not qualified to offer an expert opinion with respect to TracPipe's design, including product labelling and warnings.  The Court permitted Dr. Eagar to testify as Plaintiff's expert with respect to metallurgy, including the properties of the metals used in the manufacture of TracPipe, arc physics, the cause of the fire and the efficacy of bonding.  *See* Doc. No. 96 at 13-15. The Court further ruled that Defendant's expert, Dr. Harri Kytomaa, Ph.D., could offer opinion testimony concerning metallurgy, the properties of the metals used in the manufacture of TracPipe, and the cause of the fire, including the role, if any, of lightning. *See id.* at 16-17.

## STANDARD OF REVIEW

Pursuant to Rule 59(a), "[t]he court, may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has

---

[1]      The parties also presented testimony and argument on their cross motions for summary judgment.

ADD-40

heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The improper exclusion or admission of expert testimony is a recognized basis for granting a new trial. *See Vasquez v. Colores*, 648 F.3d 648, 652 (8th Cir. 2011).

"[T]he grant of the new trial does not interfere with the role of the jury as the trier of fact," *Fireman's Fund Ins. Co. v. Aalco Wrecking Co*., 466 F.2d 179, 185-86 (8th Cir. 1972), because "[t]he Court's ultimate inquiry is whether the first trial resulted in a miscarriage of justice" and not whether the jury correctly decided the case. *Carraway v. Christian Hosp. Ne./Nw*., No. 4:03CV1077, 2006 WL 2524203, at *1 (E.D. Mo. Aug. 30, 2006); *see also Harris v. Sec'y*, *U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997). "Although the Court has discretion to set aside the jury verdict and grant a new trial, it 'may not do so merely because it believes that the evidence permitted different inferences or that another result would be more reasonable.'" *Carraway*, 2006 WL 2524203 at *1 (quoting *Blake v. J.C. Penney Co.*, 894 F.2d 274, 281 (8th Cir. 1990)).

Decisions concerning the admission of expert testimony and the '"admissibility of proffered evidence . . . should only be overturned if there was a clear and prejudicial abuse of discretion.'" *Shelton v. Kennedy Funding Inc.,* 622 F.3d 943, 957 (8th Cir. 2010) (quoting *U. S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 689-90 (8th Cir. 2009)); *see also Littleton v. McNeely*, 562 F.3d 880, 891 (8th Cir. 2009) (holding that the admission of expert testimony is committed to the broad discretion of the trial court). A trial court abuses its discretion:

> when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors,

- 3 -

ADD-41

and no improper ones, are considered, but the court, in weighing
those factors, commits a clear error of judgment.

*Mayo Clinic v. Elkin*, 540 Fed. Appx. 546, 548 (8th Cir. 2013) (internal quotation

omitted).  Finally, even if the evidentiary decision is deemed erroneous, the motion for

new trial should not be granted unless the "error . . . affect[s] a substantial right of the

objecting party," who also bears the "burden of showing prejudice."  *Vasquez*, 648 F.3d

at 652 (internal quotation and citation omitted).

## **DISCUSSION**

### **I.  Offer of Proof and Waiver**

The Court first addresses Defendant's assertion that Plaintiff failed to make an

offer of proof at trial and waived its right to claim error with respect to the exclusion of

Dr. Eagar's defective design opinion.  Plaintiff asserts that an offer of proof was made.

Each party relies upon portions of the trial transcript to support its position.  But,

regardless of the contents of the transcript, the Court concludes that Plaintiff did not

waive its right to raise exclusion of Dr. Eagar's defective design opinion as error.  Under

current[2] Eighth Circuit law, Plaintiff was not required to make an offer of proof at trial to

preserve that error because the Court explicitly ruled on the issue prior to trial.  "Once the

---

[2]     Before the 2000 Amendments to Federal Rule of Evidence 103, the Eighth Circuit
applied the rule that Defendant now urges on the Court, but the Eighth Circuit has not
done so since the enactment of those Amendments.  *Compare Dupre v. Fru-Con Eng'g
Inc.*, 112 F.3d 329, 336-37 (8th Cir. 1997) (holding, despite a formal ruling on a motion
*in limine*, that a party waived any right to appellate review by failing to make an offer of
proof at trial) *with Bady v. Murphy-Kjos*, 628 F.3d 1000, 1003 (8th Cir. 2011) (holding
that "[o]nce the court makes a definitive ruling on the record admitting or excluding
evidence, either at or before trial, a party need not renew an objection or offer of proof to
preserve a claim of error for appeal") *and Shelton*, 622 F.3d at 958 n.14 (explaining the
effect of the 2000 Amendments).

- 4 -

ADD-42

court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.  *See* Fed. R. Evid. 103(b); *see, e.g.*, *Shelton,* 622 F.3d at 957 (holding that trial court's ruling from the bench refusing to allow witness to testify was a "definitive ruling" precluding the need for an offer of proof to preserve a claim of error); *United States v. Collier*, 527 F.3d 695, 699 (8th Cir. 2008) (holding that the denial of a motion *in limine* was a "definitive ruling," precluding the need for an offer of proof to preserve a claim of error).

Therefore, the Court concludes that its ruling on the *Daubert* motion relating to Dr. Eagar's defective design opinions was sufficiently "definitive" to satisfy that requirement.  Moreover, even if an offer of proof were necessary, the transcript excerpt to which Plaintiff refers constitutes a valid offer of proof.[3]  For these reasons, the Court

---

[3]    Plaintiff identifies the following exchange, between Plaintiff's counsel and the Court and in the jury's absence, as its offer of proof:
[COUNSEL]:  And I apologize for not catching this earlier, but its'[sic] the --
THE COURT:  Offer of proof.
[COUNSEL]: --offer of proof.
THE COURT:  Yeah, I meant to remember that.
[COUNSEL]:  The offer of proof on the motions in limine. And I wanted to simply make that part of the record so that it is incorporated into the record.
THE COURT:  And this is on the black iron pipe?
[COUNSEL]: It was the references to counterstrike, the motions
THE COURT:  No, no, no, that's not what we talked about. We did not talk about counterstrike yesterday, we talked about black iron pipe.
[COUNSEL]:  Oh, I understand.  And I understand that at some point you allowed me to make that offer of proof. I did not make that on the black iron pipe compared to the CSST.
THE COURT:  All right.

- 5 -

ADD-43

concludes that Plaintiff has not waived its right to raise the exclusion of Dr. Eagar's testimony as error.

## II.  The Exclusion of Dr. Eagar's Design Defect Opinion as Prejudicial Error

Plaintiff asserts that the Court's exclusion of Dr. Eagar's testimony with respect to defective design was erroneous and, in conjunction with the admission of Dr. Kytomaa's expert opinions, substantially affected the jury's verdict.

In ruling on the *Daubert* motion and excluding Dr. Eagar's design opinions, the Court carefully considered the applicable law, the parties' arguments, and the matters presented at the hearing.  Therefore, the Court is satisfied, for the reasons set forth in its ruling on the *Daubert* motions, that the exclusion of Dr. Eagar's design opinion was proper.  *See* Doc. No. 96 §§ IIA-IIC.  As the Court noted in that ruling, the Eighth Circuit has long held that an expert is only permitted to offer testimony within the bounds of his qualifications, and may not offer opinions outside of his area of expertise.  *See Weisgram v. Marley Co.*, 169 F.3d 514, 520-21 (8th Cir. 1999) (concluding that a metallurgist was

---

[COUNSEL]:  I waived that.  It's the motions *in limine*, I wanted to have those, make sure they are part of the record so that they are incorporated into the record should the matter proceed further.
THE COURT:  All right.
***
[COUNSEL]:  But the one in particular is No. 6, that's Dr. Eagar's testimony referring to a defect in the CSST.  Simply wanted to make that part of the record so that it's incorporated in the proceeding.
THE COURT:  Yes, absolutely.  You mean that what I did not -- what I struck as a result of the Daubert motion?
[COUNSEL]:  Yes.
THE COURT:  Yes.  Absolutely.
Doc. No. 260; Trial Transcript, Vol. III; 55:3-56-16.

- 6 -

ADD-44

not an expert in product design and testing).  "[T]he test is whether the witness' training and experience demonstrate a knowledge of the subject matter."  *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 858 (8th Cir. 1975) (quotation omitted).

Moreover, as the Court noted in its *Daubert* ruling, other courts in similar cases have excluded Dr. Eagar's opinions regarding product design and design alternatives. *See Cincinnati Ins. Co. v. Omega Flex, Inc.*, No. 3:10-CV-00670M, 2013 WL 2120322, at *1 (W.D. Ky. May 15, 2013) (refusing to reconsider its ruling that "Dr. Eager [sic] may not opine generally as to the standard of care of manufacturers or specifically as to Omega Flex's conduct" because "[s]uch opinions are outside his field of expertise, metallurgy") (internal quotations omitted); *More, JB, Inc. v. Nutone, Inc.*, No. A-05-CA-338 LY, 2007 WL 4754173, at *4 (W.D. Tex. Mar. 21, 2007) (holding that Eagar's expertise in metallurgy, materials science, and failure analysis qualified him to opine regarding fire causation but precluded his proposed testimony regarding the use of other materials as "commercially feasible alternative design[s]").  Finally, the Court notes that despite Dr. Eagar's recognized expertise in metallurgy, arc physics, materials science, and fire causation, the Court's ruling was premised upon its determination that this expertise lacked a sufficient relationship to the design questions presented here: the standard of care required of a manufacturer and the feasibility of alternative designs.  *See* Doc. No. 96, at 13-15.

Plaintiff fails to raise new arguments or cite to applicable authority that would alter the Court's previous determination.  Plaintiff asserts that the Eighth Circuit's holding in *Holmgren v. Massey-Ferguson, Inc.*, that "an expert's qualifications cannot

- 7 -

ADD-45

depend on his *precise* skill or background in a particular profession or industry" renders the exclusion of Eagar's design opinions erroneous.  516 F.2d at 858 (emphasis supplied) (also stating that "[i]f the subject matter (safe design) falls within a person's experience in or overall knowledge of a specialized skill (engineering) this is sufficient to qualify the witness as an expert").  But Plaintiff's reliance on *Holmgren* is misplaced in light of more recent Eighth Circuit decisions explaining with greater precision the qualifications necessary to permit expert testimony regarding product design.  *See, e.g., Khoury v. Philips Med. Sys.,* 614 F.3d 888, 893 (8th Cir. 2010) (affirming, in a product liability action against a manufacturer of medical equipment, the exclusion of an ergonomist's expert opinion regarding defective design because the ergonomist had no training, education, or experience in the design of such medical equipment); *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003) (recognizing that "some engineering principles can be applied universally" but affirming, in a product liability action, the exclusion of engineering expert's defective design opinion because expert had never designed or consulted on design of product in question); *Krueger v. Johnson and Johnson Professional, Inc.*, 66 Fed. Appx. 661, 662 (8th Cir. 2003) (holding, in a product liability action against manufacturer of medical device, that exclusion of metallurgist's expert testimony regarding defective design was not an abuse of discretion where metallurgist had insufficient knowledge or experience with the design of the device or similar systems).

In addition, even if the Court improperly excluded Dr. Eagar's design opinion, the Plaintiff has not satisfied its burden to show that such exclusion affected Plaintiff's

- 8 -

ADD-46

substantial rights or resulted in prejudice.  *See Vasquez*, 648 F.3d at 652 (requiring a showing that expert testimony excluded by the trial court was "of such a critical nature that there is no reasonable assurance that the [fact-finder] would have reached the same conclusion had the evidence been admitted") (internal quotation omitted).  The Court's *Daubert* ruling did not completely deprive Plaintiff of the opportunity to address issues relevant to TracPipe's design.  The Court permitted Dr. Eagar to testify regarding the properties and failure characteristics of CSST, the metal used in TracPipe, and the properties of other materials, like black pipe, that have been used for similar purposes. But because Dr. Eagar lacked design training and experience, the Court did not permit him to opine that the selection of CSST for TracPipe constituted a flaw in the design process and that the design of TracPipe was defective due to the failure characteristics of CSST.  In other words, the Court concluded that in the absence of design expertise, Dr. Eagar's opinion on those issues would not reliably assist the jury in deciding the ultimate legal issue regarding defective design and should be excluded.  Plaintiff had the opportunity to offer, by way of Dr. Eagar's testimony, evidence from which the jury could have determined that the product design was defective.  The jury's failure to draw that conclusion does not warrant a new trial.

Accordingly, for the reasons stated here and in this Court's ruling on the *Daubert* motions, Plaintiff's motion for new trial on the ground that the Court erroneously excluded Dr. Eagar's product design opinions is denied.  *See* Doc. No. 96, Part II. A-B.

ADD-47

### III.  Failure to Exclude Dr. Kytomaa's Opinion Testimony

At trial, in the presence of the jury and over Plaintiff's objections, Dr. Kytomaa opined (1) that the energy from a lightning strike would dissipate too rapidly to penetrate the CSST in the TracPipe; and (2) that Dr. Eagar's opinions regarding the likely response of CSST to the conditions in the home at the time of the fire were unsound.  Plaintiff asserts that Dr. Kytomaa should not have been permitted to offer these opinions because they are premised upon a specialized knowledge of metallurgy and lightning.  Plaintiff further asserts that Dr. Kytomaa lacked such specialized knowledge as evidenced by his statements during pretrial depositions and at trial that he was not an expert in either area.[4] Plaintiff also argues that the Court's *Daubert* rulings were erroneous and inconsistent because the Court permitted Dr. Kytomaa to testify regarding fire causation issues despite his assertion that he was not an expert on lightning or metallurgy, but excluded the design opinions of Dr. Eagar, who had disclaimed design expertise.

The Court rejects each of these arguments.  First, it should be noted that Dr. Kytomaa offered the disputed opinions in the context of his testimony regarding fire causation and not as a lightning or metallurgy expert.  In addition, in the specific context of fire causation, the Eighth Circuit has advised that expert opinions may be found reliable when based upon "observations coupled with expertise."  *See, e.g., Shuck v. CNH*

---

[4]     Dr. Kytomaa testified in his deposition:
Q.  Do you hold yourself out as an expert in metallurgy?
A.  No. I'm not a metallurgist.
Q.  Do you hold yourself out as an expert in lightning?
A.  No.
Doc. No. 189-7; Oct. 11, 2012 Dep. of Dr. Kytomaa; 32:4–9.

ADD-48

*Am., LLC*, 498 F.3d 868, 874-75 (8th Cir. 2007) (citation omitted).  Plaintiff does not

identify and the Court has not found a similar holding applicable to expert opinions in the

area of defective design.  In addition, Plaintiff attaches too much import to a would-be

expert's own characterization of his credentials or expertise.  The statement of an expert

evaluating his own expertise is a factor, but not a decisive factor, in determining that

expert's qualifications.  *See Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 150-51

(1999).  And here, although the Court considered such statements by each of the experts,

they were far from conclusive, given the import of other *Daubert* factors on its decision.

*See id.* (explaining that the factors set forth in *Daubert* for assessing a witness' expertise

are flexible and "depend[ ] upon the particular circumstance of the particular case at

issue").

      For example, both party's experts disavowed expertise with respect to lightning,

yet the Court permitted each expert to testify regarding the cause of a fire which the

parties agreed related to a lightning strike on the Kostecki's property.  In addition, the

Court determined not only that Dr. Eagar's credentials as a metallurgist and his

knowledge of arc physics and materials science qualified him to opine on fire causation

issues, but, on the basis of different credentials—his background in mechanical

engineering, also found Dr. Kytomaa qualified to opine on the same issue.  In each case

the Court's determination was based on several considerations and not solely or even

significantly on the expert's statements regarding his expertise.  *See CitiMortgage, Inc. v.*

*Just Mortg., Inc.,* No. 4:09CV1909DDN, 2012 WL 1060122, at *3 (E.D. Mo. Mar. 29,

2012) (stating that "[a] court should not apply the *Daubert* factors rigidly").

- 11 -

ADD-49

Finally, even if the Court improperly admitted Dr. Kytomaa's opinions, the Court cannot conclude that Plaintiff has satisfied its burden to show that the exclusion of the testimony affected Plaintiff's substantial rights or resulted in prejudice.  *See Vasquez*, 648 F.3d at 652.  Plaintiff presented evidence contrary to Dr. Kytomaa's opinions and had the opportunity to cross examine him on those issues.  Therefore, for the reasons set forth above and those stated in this Court's earlier ruling on the *Daubert* motions, Plaintiff's motion for new trial on the ground that the Court should have excluded Dr. Kytomaa's expert opinions regarding the dissipation of lightning energy and the validity of Dr. Eagar's opinions is denied.  *See* Doc. No. 96 Part II. C.

**CONCLUSION**

On the basis of the forgoing, the Court concludes that Plaintiff has failed to satisfy its burden to demonstrate "clear and prejudicial abuse" of this Court's exercise of its discretion to exclude or admit the disputed expert opinions of Drs. Eagar and Kytomaa. *Shelton,* 622 F.3d at 957 (internal quotation omitted).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for new trial is **DENIED**. (Doc. No. 188.)

*Audrey G. Fleissig*
_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 5th day of March, 2014.

- 12 -

ADD-50

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 7, 2014, an electronic copy of the Addendum to Brief of Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that the following participants in this case are registered CM/ECF users and that service of the Addendum will be accomplished by the CM/ECF system:

Thomas P. Berra Jr.                   William J. Conroy
Neal Frederick Perryman          Lynne O'Brien Ingram
Oliver H. Thomas                    CAMPBELL & CAMPBELL
LEWIS & RICE                       1205 Westlake Drive, Suite 330
600 Washington Avenue, Suite 2500   Berwyn, PA 19312
Saint Louis, MO 63101

I further certify that the following participants in the case are not registered CM/ECF users. On July 7, 2014, two copies of the Addendum were attached to the Brief of Appellant and sent via first-class mail, proper postage prepaid to the following non-CM/ECF participants:

Douglas G. Smith
Diana M. Watral
KIRKLAND & ELLIS
300 N. LaSalle
Chicago, IL 60654

                            s/Thaddeus Baria
                            Thaddeus Baria
                            *Counsel for Appellants*

Dated: July 7, 2014