No. 14-1783
_____

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT
_____


## AMERICAN AUTOMOBILE INSURANCE COMPANY,


**Plaintiff-Appellant**


**v.**


## OMEGA FLEX, INC.,


**Defendant-Appellee.**
_____


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI,
THE HONORABLE AUDREY G. FLEISSIG, UNITED STATES DISTRICT JUDGE
_____


## BRIEF OF DEFENDANT-APPELLEE
## OMEGA FLEX, INC.
_____

**LEWIS, RICE & FINGERSH, L.C.**
Neal F. Perryman
Thomas P. Berra, Jr.
Oliver H. Thomas
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
314.444.7600 (phone)
314.612.7661 (fax)

**CAMPBELL CAMPBELL
EDWARDS & CONROY, P.C.**
William J. Conroy
Lynne M. O'Brien
Katherine A. Wang
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
610.964.1900 (phone)
610.964.1981 (fax)


*Attorneys for Defendant-Appellee Omega Flex, Inc.*

## COUNTER SUMMARY OF THE CASE

In this subrogation case, Plaintiff-Appellant American Automobile Insurance Company sought to recover for property damage sustained in a home fire following a lightning strike. The trial resulted in a jury verdict in favor of Defendant-Appellee Omega Flex, Inc. Plaintiff appeals only the District Court's discretionary rulings on the admission and exclusion of expert testimony, and its denial of Plaintiff's Motion for a New Trial based on those rulings. At issue are: (1) the District Court's limitation of Plaintiff's expert, Dr. Thomas Eagar, a metallurgist, from opining on the allegedly defective design of the product at issue—corrugated stainless steel tubing (CSST), manufactured and sold by Omega Flex; and (2) the District Court's admission of fire causation testimony by Omega Flex's mechanical engineer, Dr. Harri Kytomaa. The District Court ruled on the admission and exclusion of expert testimony after reviewing the parties' extensive briefing and exhibits and holding oral argument. The District Court properly and narrowly limited Dr. Eagar's testimony to matters within his expertise that would assist the jury. Likewise, it properly allowed Dr. Kytomaa to testify to matters within his expertise that would assist the jury. There was no abuse of discretion.

Because the issues on appeal are straightforward and have been extensively briefed, Omega Flex does not believe oral argument is necessary. Should the Court permit argument, Omega Flex believes 15 minutes per side is sufficient.

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1A of the Local Rules of the United States Court of Appeals for the Eighth Circuit, Omega Flex states that it has no parent corporation and that there is no publicly held company that owns 10% or more of its stock.

Appellate Case: 14-1783    Page: 3    Date Filed: 08/27/2014 Entry ID: 4190520

# TABLE OF CONTENTS

COUNTER SUMMARY OF THE CASE.................................................................. i

CORPORATE DISCLOSURE STATEMENT ..................................... ii

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES ...................................................................v

COUNTER STATEMENT OF THE ISSUES.........................................1

COUNTER STATEMENT OF THE CASE.............................................2

I.  BACKGROUND .............................................................................2

II.  PRETRIAL PROCEEDINGS..........................................................3

III.  TRIAL PROCEEDINGS ................................................................6

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT ......................................................................................12

I.  STANDARDS OF REVIEW.........................................................12

    A.  Standard of Review for Ruling on Motion for a New Trial...............12

    B.  Standard of Review for Rulings on Expert Testimony. ......................13

II.  THE DISTRICT COURT PROPERLY PERFORMED ITS
    GATEKEEPING DUTIES UNDER RULE 702 AND *DAUBERT*
    AND DID NOT ABUSE ITS DISCRETION BY DENYING AAIC'S
    MOTION FOR A NEW TRIAL...................................................14

    A.  The District Court Properly Limited Dr. Eagar's Testimony
        Pursuant to *Daubert*'s Requirements. .................................17

        1.  Dr. Eagar Lacks Specific Expertise That Could Assist the
            Jury in Evaluating the Design of CSST. ...................................18

        2.  The District Court Ruling's Was Narrowly Drawn to
            Allow Proper Expert Testimony. ..............................................23

Appellate Case: 14-1783    Page: 4    Date Filed: 08/27/2014 Entry ID: 4190520

3. AAIC's Experts Presented Sufficient Circumstantial Proof on Product Defect..................................................25

B. The District Court Properly Admitted Harri Kytomaa's Testimony. ..........................................................30

1. The District Court Applied the Identical Standard to Dr. Eagar's and Dr. Kytomaa's Testimony. ...........................30

2. Dr. Kytomaa's Testimony Fell Squarely Within His Demonstrated Expertise. ..........................................33

C. The District Court Did Not Abuse Its Discretion in Denying AAIC's Motion for a New Trial..........................................35

CONCLUSION ........................................................................35

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION................................................................37

ELECTRONIC FILING CERTIFICATIONS ........................................38

CERTIFICATE OF SERVICE ..................................................38

iv

# TABLE OF AUTHORITIES

## Cases

*Barrett v. Rhodia, Inc.*, 606 F.3d 975 (8th Cir. 2010) .............................................15

*Cincinnati Ins. Co. v. Omega Flex, Inc.*, No. 3:10-CV-00670M, 2013 WL
    2120322 (W.D. Ky. May 15, 2013)........................................................ 20, 23

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000) .............22

*Dancy v. Hyster Co.*, 127 F.3d 649 (8th Cir. 1997)..................................................14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct.
    2786, 125 L.Ed.2d 469 (1993)...................... 14, 15, 16, 17, 30, 31, 32, 34, 35

*Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054 (8th Cir.
    2005) ...........................................................................................................14

*Foster v. Time Warner Entm't Co.*, 250 F.3d 1189 (8th Cir. 2001) ........................13

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508
    (1997) .................................................................................................... 13, 17

*Harris v. Secretary, U.S. Dep't of Army*, 119 F.3d 1313 (8th Cir. 1997)... 13, 18, 29

*Hayes v. MTD Prod., Inc.*, 518 F. Supp. 2d 898 (W.D. Ky. 2007) ........................23

*Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252 (8th Cir. 2006).............31

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ...............................16

*Junk v. Terminix Int'l Co.*, 628 F.3d 439 (8th Cir. 2010).......................................15

*Khoury v. Philips Med. Sys.*, 614 F.3d 888 (8th Cir. 2010).............................. 15, 20

*Kuhn v. Wyeth, Inc.*, 686 F.3d 618 (8th Cir. 2012)............................................ 16, 17

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.
    Ed. 2d 238 (1999) ..................................................................... 14, 16, 31, 32

*Littleton v. McNeely*, 562 F.3d 880 (8th Cir. 2009)................................... 13, 14, 29

*Mattis v. Carlon Elec. Prods.*, 295 F.3d 856 (8th Cir. 2002) .................................12

Appellate Case: 14-1783    Page: 6    Date Filed: 08/27/2014 Entry ID: 4190520

*Miles v. Gen. Motors Corp.*, 262 F.3d 720 (8th Cir. 2001) .....................................13

*Nebraska Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410 (8th Cir. 2005) .........................................................................................................22

*Presley v. Lakewood Eng'g and Mfg. Co.*, 553 F.3d 638 (8th Cir. 2009) ..............22

*Pulla v. Amoco Oil Co.*, 72 F.3d 648 (8th Cir. 1995) ...............................................13

*Robertson v. Norton Co.*, 148 F.3d 905 (8th Cir. 1998) .........................................17

*Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726 (8th Cir. 2006) ................. 17, 19, 29

*Shuck v. CNH Am., LLC*, 498 F.3d 868 (8th Cir. 2007) .........................................31

*Warren v. Prejean*, 301 F.3d 893 (8th Cir. 2002).....................................................12

*Weisgram v. Marley Co.,* 169 F.3d 514 (8th Cir. 1999) .................................. 15, 20

*White v. Pence*, 961 F.2d 776 (8th Cir. 1992) .........................................................13

## Rules

FED. R. CIV. P. 59 .....................................................................................................13

FED. R. EVID. 403 .............................................................................................. 17, 23

FED. R. EVID. 702 ..................................................................... 14, 15, 16, 19, 35

FED. R. EVID. 704 .....................................................................................................17

Appellate Case: 14-1783     Page: 7     Date Filed: 08/27/2014 Entry ID: 4190520

## COUNTER STATEMENT OF THE ISSUES

Whether the District Court acted within its discretion in performing its gatekeeping duty under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, by limiting certain opinions of Plaintiff's metallurgist, Thomas W. Eagar, that were outside of his areas of expertise, by admitting trial testimony of Defendant's expert, Harri Kytomaa, that was squarely within his expertise, and by denying Plaintiff's request for a new trial?

- FEDERAL RULE OF EVIDENCE 702.

- *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

- *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

- *Warren v. Prejean*, 301 F.3d 893 (8th Cir. 2002).

1

## COUNTER STATEMENT OF THE CASE

## I.     BACKGROUND

This is a subrogation action in which Plaintiff-Appellant American Automobile Insurance Company ("AAIC") sought reimbursement from Defendant-Appellee Omega Flex, Inc. ("Omega Flex"), for damages paid to AAIC's insureds, Fred and Adrienne Kostecki, following an indirect lightning strike and resulting fire at the Kostecki residence.  (A-0057-61).  The Kostecki home was built in the 2001 timeframe by HIW, Inc., who retained unidentified contractors to install Omega Flex's product, corrugated stainless steel tubing ("CSST") under the name TracPipe, to serve as the propane distribution system for the residence.  (A-0210).

TracPipe CSST is manufactured by Omega Flex at its plant in Exton, Pennsylvania.  The steel tubing has a plastic coating (or jacket) that insulates the piping from electrical currents and has high electrical breakdown resistance.  (A-0154).  As a result, it is more resistant to electrical arcing from lightning or other sources than household items such as electrical wiring, copper tubing, and black iron pipe.  (A-1176).[1]  Omega Flex also furnishes a comprehensive Design Guide & Installation Instructions ("D&I Guide") that covers all aspects of designing and

---

[1]     Omega Flex has submitted its own separate Appendix, beginning with A-1125, numbered consecutively from the last page of AAIC's Appendix.

2

installing the product in a building, including installation[2] warnings and instructions requiring and describing bonding the system to the building's grounding electrode in order to equalize the electrical potential of the various pathways to ground that electricity might take, further reducing the risk of damage from electric current. (A-0211).

Despite the D&I Guide's express warnings and instructions, the CSST system in the Kostecki house was not bonded to the household grounding electrode with a dedicated bonding wire or a bonding clamp. (A-0211-12). On April 30, 2010, an indirect lightning strike struck the vicinity of the Kostecki home, resulting in a fire and damage to the home. (A-0057).

## II.    PRETRIAL PROCEEDINGS

On January 5, 2011, AAIC filed its Petition against Omega Flex in Missouri state court, asserting claims in negligence, breach of warranty, and strict products liability. (A-0056, A-0209). Omega Flex removed the case to the District Court based on diversity jurisdiction. (A-0004).

AAIC alleged that Omega Flex's TracPipe system was defective and somehow "caused" the fire at the Kostecki residence. (A-0059, 0060). AAIC's theory against Omega Flex was that energy from the nearby lightning strike

---

[2]    Omega Flex only sells TracPipe to wholesalers and distributors, who in turn sell the product to licensed, trained installers. (A-0210).

Appellate Case: 14-1783    Page: 10    Date Filed: 08/27/2014 Entry ID: 4190520

traveled into the Kostecki home and energized the TracPipe, perforating the TracPipe and allowing the propane within the TracPipe to escape from two holes and ignite.  (A-0057, A-0723-26).  Omega Flex maintained that the energy from the lightning strike dissipated, with some of the energy entering the Kostecki home and igniting combustible materials, which burned insulation off of an aluminum feeder wire and caused arcing from the wire to the CSST, creating the holes.  (A-0975-77).

Prior to trial, the parties filed extensive *Daubert*[3] briefing relating to AAIC's expert, Thomas W. Eagar, and Omega Flex's expert, Harri Kytomaa.  (A-0008-14).  On April 3, 2013, the motions were argued for nearly two hours before the District Court.  (*See generally* A-0266-346).  On June 11, 2013, the District Court issued a 32-page Memorandum and Order on the parties' *Daubert* motions and motions for summary judgment, devoting nine pages to the *Daubert* motions, and five pages solely to Dr. Eagar's opinions.  (*See generally* A-0209-40).

The District Court determined that Dr. Eagar could testify to matters within his proffered areas of expertise—metallurgy and arc physics—and offer his opinion regarding fire causation in relation to metallurgy and arc physics (A-0223); however, the District Court found AAIC had failed to show that Dr. Eagar

---

[3]     *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

4

qualified as an expert with respect to product design and product warnings to provide a reliable basis for his opinions on those issues. (A-0221).[4]

As to Dr. Kytomaa, the District Court concluded that Dr. Kytomaa's "expertise in fire causation and electrical engineering has been duly demonstrated and his opinions regarding the cause of the fire are supported by scientific literature and the testing he performed." (A-0225).

The District Court also granted Omega Flex summary judgment on AAIC's claims for strict liability failure-to-warn and breach of warranty. (A-0240). The District Court denied summary judgment to Omega Flex on AAIC's claims of design defect, and determined that AAIC's other experts' "expertise relates not only to the origin and cause of the fire but also to product design." (A-0228-29, A-0240).

Following the District Court's exclusion of Dr. Eagar's design opinions, Omega Flex filed a Motion *in Limine* to preclude AAIC's other experts from offering opinions on the issue of design, and renewing its motion for summary judgment based on the absence of any expert opinion on the issue of design. (*See* A-0017). The District Court, while properly limiting the testimony of AAIC's experts to the scope of their proffered expertise, denied summary judgment on

---

[4] AAIC did not dispute the propriety of the District Court's preclusion of Dr. Eagar's testimony regarding warnings.

Appellate Case: 14-1783    Page: 12    Date Filed: 08/27/2014 Entry ID: 4190520

AAIC's design defect claim, observing that "'[e]xpert testimony is not necessarily required' on the issue of design defect." (A-0242). Because the "existence of a defect may be inferred from circumstantial evidence with or without the aid of an expert," (A-0245), the District Court determined that "the exclusion of Dr. Eagar's opinion regarding design defect does not leave [AAIC] without expert testimony to prove its case." (A-0245). The District Court specifically cited other areas in which AAIC was expected to offer expert opinion testimony, including Dr. Eagar's opinions in metallurgy and arc physics, as supportive of AAIC's design defect claim. (A-0245).

## III. TRIAL PROCEEDINGS

Trial began on July 8, 2013. AAIC presented evidence on two theories of liability to the jury—negligent design and strict liability. (*See* A-0055). AAIC presented evidence in support of its liability claim through its experts: Robert Wysong, fire investigator; Robert Juergens, electrical engineer; Mark Goodson, electrical engineer; and Thomas Eagar, metallurgist. (*See generally* A-0551-612, A-0613-92, A-0705-52; A-0764-802). In defense of TracPipe's safe design, Omega Flex presented evidence from its liability experts: David Smith, fire investigator, and Dr. Harri Kytomaa, Ph.D., CFEI. (A-0878-927, A-0929-931, A-0974-1067).

6

AAIC's fire investigator, Robert Wysong, testified that he determined the point of origin of the fire to be the TracPipe in the area where the two holes were located. (A-0573). Mr. Wysong presented the jury with his conclusion that the fire was "caused when lightning struck [a nearby] tree, transferred the energy through the gas lines into the house, and ignited propane fuel coming out of the CSST," and that the electricity from the lightning strike "traveled along the gas pipe" and "[a]s it breached or penetrated the gas pipe, it ignited propane fuel." (A-0573).

Robert Juergens, AAIC's forensic electrical engineer, told the jury that he eliminated lightning damage and mechanical damage to the home's electrical system as a cause of the fire. (A-0639). He likewise testified that he eliminated the possibility that the home's water pipe, duct work, or a steel beam had become energized in the area of the fire's origin. (A-0658). Accordingly, he testified that the CSST gas line was the only potential source of ignition that he was unable to eliminate. (A-0660). He also, like Mr. Wysong, determined that no direct lightning strike had affected the Kostecki home.

Dr. Eagar compared the physical properties of CSST and black iron pipe and the energy resistance of each. Dr. Eagar testified that black iron pipe is .11 inch thick and that its melting point is 2,500 degrees Fahrenheit. (A-0715). He told the jury that CSST, in contrast, is .011 thick, "almost exactly 10 percent of the

7

thickness of black iron pipe" and "about [as thick as] four sheets of paper."  (A-0716).

Dr. Eagar testified to his opinion that the amount of energy required to create the two holes in the TracPipe was "2.4 coulombs for each hole.  So 4.8 coulombs total to form these two holes."  (A-0720).  He proceeded to tell the jury that, in contrast, his testing was "unable to penetrate [black iron pipe] at 267 coulombs."  (A-0720).  He elaborated that CSST was "too thin" because the "average" energy from a lightning strike is three to five coulombs, and "it only takes a tenth of a coulomb to penetrate this stuff."[5]  (A-0727).  Dr. Eagar testified that lightning perforated the TracPipe, allowing the propane within the TracPipe to escape and ignite from its contact with the molten metal.  (A-0749-50).

Finally, Dr. Eagar testified about different types of bonding and the efficacy of bonding as described by Omega Flex's Design and Installation Guide.  He testified that TracPipe needed to be bonded to "something like black iron pipe . . ., something that has some thickness to it," (A-0743), because "[s]omething thin is much easier to melt.  It's like singeing the hair on your hand.  If something is thin, you can burn it more easily, you can melt it more easily."  (A-0741-42).  The

---

[5]     Dr. Eagar further testified that, based on his "calculation," TracPipe would have to be "about .030 of an inch [thick], about three times the thickness of CSST" or "12 sheets of paper to prevent this thing from perforating in a lightning strike." (A-0777).

8

District Court permitted Dr. Eagar to opine that TracPipe needed to "have a bond every 10 feet, that means you have to have a joint every 10 feet." (A-0742).

AAIC also presented evidence, both through its electrical engineer, Mark Goodson, and through Omega Flex corporate representative Mark Albino, that TracPipe was not tested for resistance to lightning during its development before placing it on the market. (A-0796-97 (Goodson); A-0837 (Albino)).

Omega Flex presented its mechanical engineer and fire causation expert, Dr. Harri Kytomaa, who opined on the cause and origin of the fire. Dr. Kytomaa testified that he reviewed the photographs and reports; inspected the subject TracPipe; and examined the branch circuit wiring, aluminum feeder wire, and HVAC duct in the vicinity of the TracPipe. (A-0975). Dr. Kytomaa concluded from his investigation that the fire was caused by lightning and originated in the interstitial space between the basement hallway and utility room and the first floor. (A-0976). According to Dr. Kytomaa, after lightning struck the nearby tree, the energy from the strike dissipated in all directions, with some of that energy traveling toward and into the house near the area of the fire's origin. (A-0976-77). That energy then ignited combustible materials in the interstitial space between the basement hallway and utility room and the first floor, starting a small fire. (A-0977). That fire consumed the insulation of the aluminum feeder wire and the

Appellate Case: 14-1783    Page: 16    Date Filed: 08/27/2014 Entry ID: 4190520

CSST, and the energized feeder wire arced to the CSST, creating the holes. (A-0977).

Omega Flex moved for a directed verdict at the close of AAIC's evidence, arguing that AAIC lacked expert testimony on the issue of design defect and, therefore, could not reach the jury on its design defect claim. (A-0932-41). In response, AAIC argued that, despite the preclusion of Dr. Eagar's testimony on that issue, the evidence presented by Dr. Eagar and its other experts sufficiently met AAIC's burden to establish a design defect case based on circumstantial evidence. (A-0942-45). The District Court denied Omega Flex's motion and, finding AAIC had presented sufficient evidence of a defect, permitted AAIC's design defect case to go to the jury. (A-0967-68).

After the four-day trial, the jury returned a verdict for Omega Flex on AAIC's claims that Omega Flex failed to use ordinary care in designing the TracPipe and that TracPipe was unreasonably dangerous and defective. (A-1119–20). Judgment was entered in favor of Omega Flex on July 12, 2013. (A-0247).

On August 7, 2013, AAIC moved for a new trial based on the District Court's exclusion of Dr. Thomas Eagar's design defect opinion, and the admission of Dr. Kytomaa's fire causation testimony. (A-0248-51). The District Court denied the motion on March 5, 2014 (A-0252–63), and AAIC filed its notice of appeal on April 1, 2014. (A-0052).

Appellate Case: 14-1783    Page: 17    Date Filed: 08/27/2014 Entry ID: 4190520

## SUMMARY OF THE ARGUMENT

On appeal, AAIC challenges only the District Court's rulings on the exclusion and admission of expert testimony, and the denial of AAIC's Motion for a New Trial which was premised on those expert-related rulings, which are subject to an abuse of discretion standard. After reviewing hundreds of pages of briefing and exhibits from both parties, the District Court acted well within its discretion by (1) permitting AAIC's metallurgist, Dr. Thomas Eagar, to testify about metallurgy and arc physics, but precluding his opinions relating to product design and product warnings; and (2) permitting the testimony of Omega Flex's mechanical engineer, Harri Kytomaa.

The District Court engaged in the proper exercise of its gatekeeping role by limiting Dr. Eagar to opinions in areas in which he possessed the appropriate qualifications. The District Court permitted Dr. Eagar to testify on numerous subjects at trial. AAIC presented its case based on circumstantial evidence, through Dr. Eagar's testimony and that of its other experts, that the nearby lightning strike damaged the TracPipe because the TracPipe was too thin, and the TracPipe caused the fire. Because AAIC unwaveringly claimed that the alleged defect in TracPipe CSST was so "simple," the District Court's limitations on Dr. Eagar's testimony properly maintained the focus of his opinions on matters outside the jury's understanding that would assist the jury in deciding the facts of

11

the case. In the end, AAIC simply failed to carry its burden of proof and convince the jury of its position that TracPipe was defectively designed or that Omega Flex was negligent in the design of the TracPipe product. The jury was within its province to reject AAIC's contentions.

Likewise, the District Court committed no error in permitting Dr. Kytomaa to testify on the issue of fire causation, based on his extensive background and expertise as a mechanical engineer. AAIC's sole challenge to Dr. Kytomaa's opinions is, and was, that he is not a metallurgist—a standard that *Daubert* simply does not require.

The District Court's detailed, reasoned decisions to limit Dr. Eagar's testimony and permit Dr. Kytomaa's testimony were entirely correct, and the District Court's rulings demonstrate sound exercise of its discretion. The District Court acted within its discretion in denying AAIC's Motion for a New Trial. The judgment of the District Court should be affirmed in all respects.

## ARGUMENT

## I. STANDARDS OF REVIEW

### A. <u>Standard of Review for Ruling on Motion for a New Trial</u>.

"When a motion for new trial is based on rulings regarding the admissibility of evidence, the district court will not be reversed absent a clear and prejudicial abuse of discretion." *Warren v. Prejean*, 301 F.3d 893, 904 (8th Cir. 2002) (quoting *Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 863 (8th Cir. 2002)); *Foster*

12

*v. Time Warner Entm't Co.*, 250 F.3d 1189, 1194 (8th Cir. 2001) (standard of review when considering a district court's denial of a new trial is abuse of discretion). This Court has "made clear that district courts enjoy broad discretion in choosing whether to grant a new trial, and thus, [this Court] accord[s] great deference to their Rule [of Civil Procedure] 59 rulings." *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1995) (citing *White v. Pence*, 961 F.2d 776, 781 (8th Cir. 1992)). In determining whether a new trial is warranted based on alleged evidentiary errors, the "ultimate inquiry" is "whether the first trial resulted in a miscarriage of justice." *Harris v. Secretary, U.S. Dep't of Army*, 119 F.3d 1313, 1318 (8th Cir. 1997).

### B.  <u>Standard of Review for Rulings on Expert Testimony.</u>

"Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court, and these decisions will not be disturbed on appeal absent an abuse of that discretion." *Littleton v. McNeely*, 562 F.3d 880, 891 (8th Cir. 2009); *Miles v. Gen. Motors Corp.*, 262 F.3d 720, 724 (8th Cir. 2001) ("Admission of expert testimony is committed to the broad discretion of the trial court."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ("abuse of discretion is the appropriate standard" for "reviewing a trial court's decision to admit or exclude expert testimony").

13

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), district courts act as gatekeepers to "insure that proffered expert testimony is both relevant and reliable." *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997). District courts have wide latitude in determining whether an expert's testimony is reliable. *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1057 (8th Cir. 2005). The "law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142, 119 S. Ct. 1167, 1171, 143 L. Ed. 2d 238 (1999) (emphasis supplied). Moreover, "[e]ven if the district court's evidentiary decision were an abuse of discretion, any error 'must affect a party's substantial rights to warrant a new trial.'" *Littleton*, 562 F.3d at 891 (citation and quotations omitted).

## II. THE DISTRICT COURT PROPERLY PERFORMED ITS GATEKEEPING DUTIES UNDER RULE 702 AND *DAUBERT* AND DID NOT ABUSE ITS DISCRETION BY DENYING AAIC'S MOTION FOR A NEW TRIAL

Federal Rule of Evidence 702 provides that a qualified witness may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

14

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

Pursuant to the Rule, an expert is only permitted to offer testimony within the bounds of his qualifications, not opinions "outside of his area of expertise." *See, e.g., Khoury v. Philips Med. Sys.*, 614 F.3d 888, 893 (8th Cir. 2010); *Weisgram v. Marley Co.*, 169 F.3d 514, 520-21 (8th Cir. 1999) (metallurgist was not expert in product design and testing).

Moreover, under Rule 702 and *Daubert*, the district courts must act as gatekeepers to ensure that the proffered expert testimony is both relevant and reliable. 509 U.S. at 592. Rule 702's relevancy prong "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* Proffered expert testimony should be excluded if it is speculative or conjectural. *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010); *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 448 (8th Cir. 2010) ("[s]peculative testimony should not be admitted"). Similarly, expert opinions lacking a factual basis should not be permitted. *Barrett*, 606 F.3d at 980. To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence

15

both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid. *Id*.

The United States Supreme Court has emphasized that the test for reliability is flexible, and that a trial judge may, but need not, consider the specific factors identified in *Daubert*: "whether a theory or technique can be and has been tested; whether it has been subjected to peer review and publication; the known or potential rate of error; and whether it is generally accepted in the relevant discipline." *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (citing *Kuhmo Tire*, 526 U.S. at 149-50). To meet *Daubert*'s standards, the proponent of an expert's opinion must be based on "sufficient facts or data," that it is "the product of reliable principles and methods," and that those methods have been "reliably" applied to the "facts of the case." FED. R. EVID. 702 & advisory committee's note (2000); *Daubert*, 509 U.S. at 592-93. In other words, the expert's opinions must be "derived by the scientific method" and "supported by appropriate validation – *i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.

Under Rule 702 and *Daubert*, "*any* step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) (emphasis added). Likewise, a district court may exclude expert testimony if it determines "that there is simply too great an analytical gap between the data and the opinion

16

proffered." *Kuhn*, 686 F.3d at 625 (citing *Joiner*, 522 U.S. at 146). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

Under Federal Rule of Evidence 704(a), expert testimony may embrace an ultimate issue in a case, but "courts must guard against invading the province of the jury on a question which the jury [is] entirely capable of answering without the benefit of expert opinion.'' *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (quoting *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998)). A district court also may exclude expert opinions pursuant to Rule 403 because their potential prejudicial effect may outweigh their probative value. *See* FED. R. EVID. 403.

### A. The District Court Properly Limited Dr. Eagar's Testimony Pursuant to *Daubert*'s Requirements.

On appeal, AAIC rehashes arguments it made below, and still has not presented anything that would require a different decision than that reached by the District Court upon consideration of the parties' *Daubert* submissions. (*See generally* A-0252-63). The District Court narrowly limited the scope of Dr. Eagar's testimony as to the product's design, allowing him to testify on the characteristics of TracPipe, the cause of the fire, and the efficacy of bonding CSST. AAIC presented its defect case as a "simple" one—that the TracPipe CSST

17

is too thin.  Under AAIC's theory, Dr. Eagar's generalized opinions on the product design would not have provided any assistance to the jury.  Dr. Eagar's precluded testimony would have been merely superfluous and prejudicial, as the District Court permitted AAIC to reach the jury on a lower evidentiary burden of proving a design defect through circumstantial proofs.

The District Court's limitation of Dr. Eagar's testimony was far from an abuse of discretion; indeed, under the facts of the case presented at trial, the District Court reached the only proper result.  Moreover, AAIC has failed to present this Court with anything that could support a finding that the trial of this case amounted to a "miscarriage of justice," *Harris*, 119 F.3d at 1318, as required to warrant a new trial.

1. <u>Dr. Eagar Lacks Specific Expertise That Could Assist the Jury in Evaluating the Design of CSST</u>.

As previewed, AAIC's arguments concerning the exclusion of Dr. Eagar's design defect opinion are unchanged from the proceedings below.  Dr. Eagar's defect theory was that TracPipe was simply too thin to withstand damage from electrical arcing caused by lightning, in contrast to black iron pipe (also known as schedule 40 steel pipe) that allegedly is capable of withstanding such damage due to its thicker sidewalls.  (*See* AAIC Br. at 5, A-0171; *see infra*, Part II.A.3).[6]

---

[6] Dr. Eagar's defect opinion, as set forth in his report, is that

18

Therefore, AAIC presented a defect theory involving "a question which the jury [is] entirely capable of answering without the benefit of expert opinion.'' *Rottlund Co.*, 452 F.3d at 732. Dr. Eagar's proffered testimony would have told the jury nothing more than what was clear from the actual evidence at trial: that CSST is flexible and made from a thin stainless steel (as compared to schedule 40 steel pipe).

Significantly, AAIC never identifies for this Court precisely what opinions Dr. Eagar was allegedly erroneously precluded from offering at trial, or how Dr. Eagar would have offered permissible testimony to support those opinions. AAIC spends three full pages of its brief detailing Dr. Eagar's general qualifications. (*See* AAIC Br. at 11-13). While AAIC emphasizes the "liberal" requirements of Rule 702 and *Daubert*, the lack of specificity by AAIC as to the substance of the excluded testimony, and why that excluded testimony should have been admitted at trial and would have altered the outcome, is fatal to its appeal

---

the material properties and geometry of CSST make the probability of a lightning flash causing a hole due to either resistive heating or an electrical arc between adjacent electrical conductors many times more hazardous than use of steel pipe for transport of hydrocarbon gases. . . . CSST is so thin that it is unreasonably dangerous unless all joints contain electrical jumpers and the CSST is grounded every few feet to a suitable lightning ground strap.

(A-0171).

Appellate Case: 14-1783    Page: 26    Date Filed: 08/27/2014 Entry ID: 4190520

arguments. AAIC's inability to coherently articulate the substance of Dr. Eagar's excluded testimony, and the reasons why the excluded testimony would have had a substantial impact on the outcome of the case, is telling. And it certainly demonstrates that AAIC cannot show (and has not shown) that the District Court abused its discretion in narrowly limiting Dr. Eagar's trial testimony to areas within his expertise.

The District Court properly considered Dr. Eagar's own testimony in which he "specifically disavowed" expertise in the design of CSST systems or of residential gas systems. (A-0221). Dr. Eagar has testified that he does "not hold [him]self out as an expert in the design of corrugated stainless steel systems." (A-0220). Likewise, Omega Flex presented the District Court with Dr. Eagar's testimony that he has never designed a CSST system or a lightning protection system, nor ever published any article on the design or installation of a CSST system. (A-1251-52, A-1254; A-1264-65). While the District Court permitted Dr. Eagar to testify in the areas of metallurgy and arc physics, design defect opinions fell "outside of his area of expertise." *See, e.g., Khoury*, 614 F.3d at 893; *Weisgram*, 169 F.3d at 520-21 (metallurgist was not expert in product design and testing); *see also Cincinnati Ins. Co. v. Omega Flex, Inc.*, No. 3:10-CV-00670M, 2013 WL 2120322, *2 (W.D. Ky. May 15, 2013). The District Court appropriately determined that Dr. Eagar's expertise in metallurgy and arc physics "bear no more

20

than a remote relationship to product design," and that "[i]n the absence of specific expertise on [this issue], his testimony will provide little assistance to the jury."[7] (A-0221).

Further, the District Court examined in detail Dr. Eagar's education, background, and experience—not in the abstract, as AAIC urged—but in relation to the specific allegations and evidence in this case. As Omega Flex argued in its *Daubert* motion, Dr. Eagar never performed any testing or cited any reliable data to establish that his proposed alternative to CSST—black iron pipe—was a safer, feasible alternative design. (*See* A-0157 (Dr. Eagar's proposed bonding solution would "negate most of the economic advantages of installing CSST as compared to black iron pipe"); A-1176). Nor could he point to any literature that supported his conclusion that black iron pipe was a safer alternative to CSST. (A-1260). Similarly, he offered no concrete support for his opinion that TracPipe, to be "non-

---

[7] In a recent, factually similar case involving nearly identical allegations against Omega Flex, the District of Connecticut issued an order limiting Dr. Eagar's testimony to metallurgy issues as well, precluding his testimony "as to legal issues, including the effective warnings, the standard of care and the defective design." (OFADD-002-003 (Excerpts from Civil Docket for *Nationwide Mutual Fire Insurance Company v. Omega Flex, Inc.*, Case #: 3:10-cv-01596-SRU (D. Conn.)); OFADD-004-006 (Excerpts (unpublished) from May 29, 2013 Motion Hearing Transcript, *Nationwide Mutual Fire Insurance Company v. Omega Flex, Inc.,* Case #: 3:10-cv-01596-SRU (D. Conn.))). Plaintiff in that case, which was represented by some of the same attorneys as in this case, did not seek review of that order.

Appellate Case: 14-1783    Page: 28    Date Filed: 08/27/2014 Entry ID: 4190520

defective" needed to be grounded every few feet. (*See* A-0150-80). As the District Court observed in denying AAIC's motion for a new trial, in the absence of some reliable method for substantiating Dr. Eagar's conclusions, his general expertise in metallurgy, arc physics, and material science "lacked a sufficient relationship to the design questions presented here: the standard of care required of a manufacturer and the feasibility of alternative designs." (A-0258).

Given that AAIC took the position that its defect theory was a "simple" one (TracPipe CSST is too thin), the District Court properly limited Dr. Eagar's design defect opinions that were "formulated merely upon general observations of the evidence and general scientific principles," *Presley v. Lakewood Eng'g and Mfg. Co.*, 553 F.3d 638, 646 (8th Cir. 2009), and which failed to consider the "specific facts of the case." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000). *See also Nebraska Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410, 416-17 (8th Cir. 2005) (excluding expert who "failed to take into account a plethora of specific facts").

The District Court also raised the very valid concern that, were Dr. Eagar to offer design opinions at trial, "[t]he jury might afford [Dr. Eagar's testimony] greater weight than warranted because 'the shroud of his irrelevant expertise in another area will likely elevate his opinion above a mere observation to a legal conclusion." (A-0222 (quoting *Cincinnati Ins. Co. v. Omega Flex, Inc.*, 2013 WL

22

2120322, *2; *Hayes v. MTD Prod., Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007)); *see also* FED. R. EVID. 403. That determination was correct; it certainly was not an abuse of discretion.

    2.    <u>The District Court Ruling's Was Narrowly Drawn to Allow Proper Expert Testimony</u>.

AAIC proffered Dr. Eagar to offer opinions on several topics, including fire causation, design defect, efficacy of bonding, codes and standards, and warnings accompanying TracPipe. (A-0219). The District Court denied Omega Flex's *Daubert* motion in part and allowed Dr. Eagar to testify about causation and the efficacy of bonding, observing that those issues in the case hinged upon "the possible effects of an electrical arc on a metal, CSST, and the measures required to alter the conductivity of that metal." (A-0222).

Dr. Eagar presented all of his substantive opinions in his trial testimony. He compared the metallurgical and physical properties of CSST and black iron pipe, he discussed the amount of energy needed to create a hole in CSST and black iron pipe, and he opined concerning his proposed bonding solution. (*See generally* A-0705-52, A-0764-78). While the District Court did not permit Dr. Eagar to use the word "fail," he nevertheless conveyed his opinion that TracPipe is "just too thin" (A-0727), and that "the mode of failure in the CSST is arc damage between adjacent conductors." (A-0171).

23

Further, while Dr. Eagar was precluded from giving his "estimate" that it "takes 5,000 times as much energy to penetrate [black iron pipe]" than CSST, (A-0720-21), ultimately, he engaged in precisely the comparison between CSST and black iron pipe that Omega Flex sought to preclude. He directly compared the physical and energy resistance characteristics of CSST and black iron pipe, telling the jury that CSST is one tenth the thickness of black pipe, only as thick as "four sheets of paper." ((A-0716; *see also* A-0717) (black iron pipe is "about 40 sheets of paper, it's about ten times thicker")). Dr. Eagar gave the precise testimony at trial that embodied his (and AAIC's) entire defect theory—that TracPipe is "too thin." (A-0727).

In addition to his physical comparison between the two products, Dr. Eagar testified to the amounts of energy needed to penetrate each: 2.4 coulombs for CSST (A-0720), and over 267 coulombs for black iron pipe (A-0720). Dr. Eagar testified that the TracPipe CSST "allowed these perforations to happen" because "it's just too thin" (A-0727), and that it needed to be three times thicker to withstand a lightning strike. (A-0777). Finally, Dr. Eagar told the jury that TracPipe needed to be bonded to "something like black iron pipe" (A-0743), and that those bonds had to be every ten feet. (A-0742).

Similarly, while the District Court sustained Omega Flex's objection to the term "failure mode," (A-0743), it permitted Dr. Eagar to testify that lightning

Appellate Case: 14-1783　　Page: 31　　Date Filed: 08/27/2014　Entry ID: 4190520

perforated the TracPipe and ignited the propane it was carrying. (A-0749-50). Dr. Eagar conveyed to the jury that could happen because, in his opinion, TracPipe was "too thin." (A-0727-28).

Therefore, while the District Court's limitation on Dr. Eagar's testimony may have prevented him from using his preferred language, he still conveyed the substance of his design defect theory and failure mode opinions to the jury. Indeed, "[AAIC] had the opportunity to offer, by way of Dr. Eagar's testimony, evidence from which the jury could have determined that the product design was defective. The jury's failure to draw that conclusion does not warrant a new trial." (A-0260). Again, notably, AAIC never explains what specific opinion of Dr. Eagar was improperly excluded or why the exclusion of that particular opinion mattered.

The District Court did not err or abuse its discretion.

> ### 3. AAIC's Experts Presented Sufficient Circumstantial Proof on Product Defect.

As stated, the District Court permitted AAIC—despite the exclusion of Dr. Eagar's design defect opinion—to present its defect case based on circumstantial evidence. (A-0244 ("The Court is satisfied that as a general rule expert testimony is not mandatory in a case such as this and that Defendant is not entitled to summary judgment on the defective design claim.")).

The District Court cited the various forms of proof, through Dr. Eagar and AAIC's other experts, which would support AAIC's design defect claim without Dr. Eagar's design defect opinion testimony:

> [T]he exclusion of Dr. Eagar's opinion regarding design defect does not leave [AAIC] without expert testimony to prove its case. Experts qualified and designated to opine on such issues as fire causation and origination, electrical faults and malfunctions, bonding and grounding mechanisms and the requirements of the National Electric Code for the installation of products such as TracPipe, to name a few, are expected to testify to assist the jury in making its determination. In addition, Dr. Eagar may still offer expert opinions in the areas of metallurgy and arc physics where the Court found him qualified. Expert testimony in these areas may sufficiently assist the jury in determining whether a defect in the design of TracPipe caused the damage here.
>
> Finally, this is not a case where the expert opinion as to defect is the only evidence, lay or expert, regarding design defect. ***Because the issue of defect may be inferred from circumstantial evidence, the absence of an opinion on the ultimate issue of defect is not fatal to [AAIC's] claim***.

(A-0245) (emphasis added).

In reality, the District Court's ruling limiting Dr. Eagar's testimony in no way hampered AAIC from presenting its defect case to the jury. In conjunction with Dr. Eagar's extensive testimony comparing CSST and black iron pipe, discussing the ability of lightning to perforate CSST, and offering his opinion that CSST is simply "too thin," the jury heard from AAIC's other experts who presented evidence in support of its case.

26

Mr. Wysong told the jury that he determined that the fire originated in the area of the two TracPipe holes, and he testified to his conclusion that energy from a lightning strike followed the gas line into the Kostecki home, penetrated the CSST, and ignited the propane.  (A-0573; *see also* AAIC Br. at 8).  Mr. Juergens testified that he eliminated all other potential ignition sources in the home except for the TracPipe.  (A-0658, A-0660; *see also* AAIC Br. at 9).  The jury also heard that Omega Flex did not test TracPipe for lightning resistance, and that Omega Flex knew of lightning-related incidents of fires in homes equipped with CSST prior to the fire at the Kostecki home.  (*See* A-0794-95, A-0796-97, A-0837; *see also* AAIC Br., at 6).

In response to Omega Flex's motion for a directed verdict at trial, AAIC itself highlighted the evidence from which the jury could infer the existence of a defect:

> [I]n this case there has been extensive testimony from experts regarding not just a circumstance, pretty much ***every circumstance surrounding this event from the thickness of the steel to the melting temperature of the steel, scientific calculations that were used to show why the perforation was caused by a specific event.  Other testimony regarding why precautionary measures to prevent this in the form of bonding are ineffective***.  All this supported by expert testimony step by step.

> So it's not a matter of simply leading the jury down a road where they have to take a jump off of a cliff.  You have surrounded the jury with evidence and facts such that they don't have to speculate, all the information is there.  And ***while admittedly with Dr. Eagar's, the limitations on his testimony regarding design***

27

*defect, those concepts have been covered through circumstantial evidence in an adequate manner such that it wouldn't require a jury to speculate at all that they have a prima facie case.*

> And taking all the reasonable inferences in the favor of the plaintiff in recognizing that, ***not only is this simple or noncomplex material, but that the plaintiff has covered virtually every angle or circumstance possible that could lead to the failure of this pipe and the unreasonable condition which ultimately leads to a gas fed fire in residential homes. So they have demonstrated these proofs, albeit through circumstantial proof to the point that a jury would not have to speculate***, and a directed verdict at this time is simply inappropriate.

(A-0942-43) (emphases added).[8]  The District Court agreed with AAIC and, denying Omega Flex's motion for directed verdict, allowed AAIC to reach the jury on a circumstantial case of design defect.  (A-0968).

AAIC received every benefit of the District Court's ruling, as it presented the jury with the full substance of its evidence: Dr. Eagar's criticism of TracPipe as being "too thin," TracPipe's allegedly inadequate response to the energy generated by a lightning strike, and the proposed solution of increasing TracPipe's thickness

---

[8]  AAIC consistently has taken the position that TracPipe is a "simple" product, arguing that "design defects can be established through circumstantial evidence with or without expert opinion testimony."  (A-1293; *see also* A-1313 ("the product at issue is simply not that complicated")).  The District Court agreed with AAIC's argument that "this case does not require expert opinion testimony alone to establish that Omega Flex's Tracpipe was defectively designed as the product's simple construction and its primary purpose, the conveyance of gas in homes, is within the realm of the understanding of the jury," (A-1293), and permitted AAIC to reach the jury without expert testimony that TracPipe is defectively designed.

Appellate Case: 14-1783     Page: 35     Date Filed: 08/27/2014 Entry ID: 4190520

(by bonding or otherwise); the conclusions of Mr. Wysong and Mr. Juergens that the TracPipe was the only possible source of the fire; and evidence that Omega Flex failed to test TracPipe for lightning resistance.

In the end, AAIC presented its entire design defect case to the jury based on the premise that the product and the alleged defect were simple. AAIC having received the full benefit of its circumstantial evidence, the logical corollary is that "the jury was entirely capable of answering [the question of design defect] without the benefit of expert opinion" on that ultimate issue. *Rottlund Co.*, 452 F.3d at 732. AAIC cannot have it both ways, and now argue that TracPipe was a complex product that required expert testimony—the position AAIC must take to establish that Dr. Eagar's excluded testimony would have changed the outcome of trial and that the District Court's limitation resulted in any prejudice to AAIC. In any event, AAIC has not been able to explain what specific excluded testimony should have been admitted, and how that testimony would have altered the outcome.

Because AAIC cannot show that Dr. Eagar's precluded testimony would have resulted in a different outcome, it has failed to establish that the District Court's limitation of Dr. Eagar's testimony "affect[ed its] substantial rights," *Littleton*, 562 F.3d at 891, or amounted to a "miscarriage of justice" warranting a new trial, *Harris*, 119 F.3d at 1318.

29

**B.** **The District Court Properly Admitted Harri Kytomaa's Testimony.**

AAIC also raises, as additional grounds for its appeal, albeit in only about two pages of argument in its Brief (at pp. 36-38), the District Court's admission of Dr. Kytomaa's testimony. The sole basis of AAIC's argument regarding Dr. Kytomaa is that Dr. "Kytomaa admittedly has no metallurgical expertise."[9] (AAIC Br. at 36). AAIC's attack is unconvincing. The District Court never qualified Dr. Kytomaa as a metallurgist, and *Daubert* does not require Dr. Kytomaa to hold the identical credentials—or even area of expertise—as Dr. Eagar, in order for him to be qualified to opine on the same specific issue of fire causation. Rather, the District Court carefully examined Dr. Kytomaa's credentials and experience, permitting his testimony on fire causation based on his expertise in mechanical engineering. (*See* A-0262).

1. The District Court Applied the Identical Standard to Dr. Eagar's and Dr. Kytomaa's Testimony.

AAIC incorrectly asserts, without any support, that the District Court applied any different standard to Dr. Kytomaa's fire causation testimony than it did to Dr. Eagar's. The *Daubert* inquiry is a flexible one, and a district court's "gatekeeping inquiry must be 'tied to the facts' of a particular case." *Kumho Tire*,

---

[9]     AAIC mischaracterizes Dr. Kytomaa's testimony. He testified only that he is not "a metallurgist." (*See* A-0927).

Appellate Case: 14-1783     Page: 37     Date Filed: 08/27/2014 Entry ID: 4190520

526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591). The District Court considered Dr. Kytomaa's qualifications, along with his testing, peer reviewed publications, and general scientific methods, and determined that "[h]is expertise in fire causation and electrical engineering has been duly demonstrated and his opinions regarding the cause of the fire are supported by scientific literature and the testing he performed."[10] (A-0225).

As the District Court observed, expert opinions on the cause of a fire may be found reliable when based solely upon observations and experience. *See*, *e.g.*, *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874-75 (8th Cir. 2007) (expert opinion based upon observation and expertise that engine failure caused a fire reliable because experts for both parties relied on this methodology and the engine components were too damaged to be tested); *Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1257 (8th Cir. 2006) (fire causation expert's opinion was admissible where the methodology involved no testing but the application of specialized knowledge to observations of a fire scene); *see also Kumho Tire*, 526

---

[10] Moreover, AAIC, as the party raising the challenge to Dr. Kytomaa's testimony, failed to provide the District Court with adequate support to justify the relief it sought. The District Court found "[AAIC's] objections are largely conclusory and unsupported by examples from Kytomaa's report or scientific authority challenging his methods or data. Therefore, upon review of the report, the Court cannot say that Kytomaa's theory is unsupported by scientific methodology." (A-0225).

31

U.S. at 137 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"). Therefore, the District Court determined both that "Dr. Eagar's credentials as a metallurgist and his knowledge of arc physics and materials science qualified him to opine on fire causation issues," and that "on the basis of different credentials—his background in mechanical engineering, also found Dr. Kytomaa qualified to opine on the same issue." (A-0262).

Moreover, the District Court did not, as argued by AAIC, simply rely upon each expert's claim or disclaimer of expertise in a certain field as dispositive. Just as Dr. Kytomaa did not claim to be a "lightning expert" or a "metallurgist" per se, nor did Dr. Eagar claim to be an expert in lightning, design, warnings, or fire cause and origin. While the District Court "considered such statements by each of the experts, they were far from conclusive, given the import of other *Daubert* factors on its decision." (A-0262). In particular, the District Court permitted Dr. Eagar to offer opinions on fire causation as it related to a lightning strike, despite Dr. Eagar disclaiming expertise both as a lightning expert and a cause and origin expert.[11] (A-0262).

---

[11]    For instance, Dr. Eagar testified about the properties of lightning strikes and the average energy generated by a lightning strike, testifying to his opinion that the two holes in the Kostecki home CSST were caused by a "lightning bolt that has more than one strike." (A-0723-24). Dr. Eagar also testified about the heat flow

32

Just as the District Court determined that AAIC's criticisms of the "reliability of Kytomaa's methods and testing" addressed the weight of his testimony, rather than its admissibility, (A-0225), the District Court reached the same decision regarding Dr. Eagar's causation opinion, along with his data, theories, and testing methods in support of his opinions. (A-0223) ("Defendant will have the opportunity on cross-examination to challenge Eagar's opinions and the underlying justification for them."). In the end, Dr. Eagar and AAIC presented to the jury the substance of AAIC's design defect theory, as shown above.

2. Dr. Kytomaa's Testimony Fell Squarely Within His Demonstrated Expertise.

Dr. Kytomaa possesses an extensive background in mechanical engineering, fire cause and origin, materials, code review, and electrical causation. (*See generally*, A-0913-26). Dr. Kytomaa has focused his career in the specialized fields of mechanical engineering, fire causation, and fluid thermal subjects.[12] (A-0913, A-0919-20). He possesses certifications from the National Association of Fire Investigators National Certification Board, the International Association of

---

calculation he performed, from which he concluded that "these holes were produced by lightning." (A-0725-26).

[12] Fluid thermal subjects include heat transfer—how heat is transferred and how to use that in engineering; thermodynamics—how materials behave at different temperatures; and fluid mechanics—the study of motion of gases and liquids in pipes. (A-0920).

Appellate Case: 14-1783     Page: 40     Date Filed: 08/27/2014 Entry ID: 4190520

Arson Investigators, and the California State Fire Marshall. (A-0915-16). In his work as a fire causation expert, Dr. Kytomaa has investigated hundreds of fires. (A-1285). He has published more than fifty articles and abstracts in various scientific publications, including numerous articles on fire causation, fire investigation, ignition, and natural gas transportation. (A-1273-77).

Given Dr. Kytomaa's extensive "background in mechanical engineering," (A-0262), the District Court properly determined that he could render opinions in the area of the electrical fire causation issues in this case, and that "[AAIC's] assertions regarding the reliability of Kytomaa's methods and testing are also best addressed on cross examination because they go to the weight rather than the reliability of his opinion." (A-0225). AAIC's counsel did, in fact, question Dr. Kytomaa as to whether he was an "expert in metallurgy," (A-0927), whether he was an "expert in lightning," (A-1050); about testing he conducted, (A-1052-58); and about his investigation of the Kostecki home, (A-1058-60).[13]

In applying the identical standards that the District Court applied to Dr. Eagar's testimony, AAIC's argument reveals no error in the District Court's decision to permit Dr. Kytomaa's fire causation opinions.

---

[13]     Notably, although given an opportunity to cross-examine Dr. Kytomaa specifically on his qualifications, AAIC chose not to do so in front of the jury, instead repeating to the District Court its only *Daubert* argument: that Dr. Kytomaa was not a metallurgist. (*See* A-927-929).

34

Appellate Case: 14-1783     Page: 41     Date Filed: 08/27/2014 Entry ID: 4190520

## C.  **The District Court Did Not Abuse Its Discretion in Denying AAIC's Motion for a New Trial.**

Because the District Court did not abuse its discretion in respect to its decisions to exclude and admit testimony of experts Dr. Eagar and Dr. Kytomaa, it follows and is clear that the District Court did not err in denying AAIC's Motion for a New Trial.  There was no "clear and prejudicial abuse of discretion." *Prejean*, 301 F.3d at 904.  For all of the foregoing reasons, the District Court's decision to deny a new trial must be affirmed.

## CONCLUSION

The District Court considered extensive evidence and argument from both parties in ruling to preclude portions of Dr. Eagar's testimony and to allow Dr. Kytomaa's testimony.  The District Court's narrow limitation on Dr. Eagar's testimony was well within its broad discretion under Rule 702 and *Daubert*, as was its admission of Dr. Kytomaa's testimony.  AAIC has failed to establish that the District Court committed any error, much less that it abused its discretion in any way that could have affected the verdict or AAIC's substantial rights, or that would require a new trial.

Appellate Case: 14-1783     Page: 42     Date Filed: 08/27/2014 Entry ID: 4190520

This Court should affirm the District Court's rulings and the judgment in favor of Omega Flex.

Respectfully submitted,

By:   */s/ Neal F. Perryman*
        Neal F. Perryman
        Thomas P. Berra, Jr.
        Oliver H. Thomas
        LEWIS, RICE & FINGERSH, L.C.
        600 Washington Avenue, Suite 2500
        St. Louis, MO 63101
        (314) 444-7661

        William J. Conroy
        Lynne M. O'Brien
        Katherine A. Wang
        CAMPBELL CAMPBELL EDWARDS & CONROY, P.C.
        1205 Westlakes Dr., Suite 330
        Berwyn, PA 19312
        (610) 964-1900

        *Attorneys for Defendant-Appellee Omega Flex, Inc.*

Appellate Case: 14-1783    Page: 43    Date Filed: 08/27/2014 Entry ID: 4190520

## CERTIFICATION OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

This brief complies with the type–volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,389 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  August 27, 2014                          */s/   Neal F. Perryman*                          
                                                 Neal F. Perryman

Appellate Case: 14-1783    Page: 44    Date Filed: 08/27/2014 Entry ID: 4190520

## ELECTRONIC FILING CERTIFICATIONS

I, Neal F. Perryman, hereby certify that the text of the electronic version of this brief is identical to the text of the paper copies of the brief. I hereby further certify that this brief was scanned for viruses using Malwarebytes Anti-Malware software and no virus was detected.

I further certify that the electronic version of this brief filed with the Court complies with this Court's Local Rule 25A because it has been submitted in Portable Document Format (PDF), which was generated by printing to PDF from the original word processing file so that the electronic version may be searched and copied.

Dated: August 27, 2014            */s/   Neal F. Perryman*
                                                Neal F. Perryman

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via this Court's CM/ECF filing system this 27th day of August, 2014, to registered counsel.

Some participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, to:

Mr. Douglas G. Smith and Ms. Diana M. Watral

                                      /s/ Neal F. Perryman

Appellate Case: 14-1783     Page: 45     Date Filed: 08/27/2014 Entry ID: 4190520