# In the
# United States Court of Appeals
## for the Eighth Circuit

AMERICAN AUTOMOBILE INSURANCE COMPANY,

*Plaintiff-Appellant,*

v.

OMEGA FLEX, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Missouri, St. Louis, No. 4:11-cv-00305-AGF.
The Honorable **Audrey G. Fleissig**, Judge Presiding.

## REPLY BRIEF OF APPELLANT

ANTHONY J. MORRONE
THADDEUS C. BARIA
COZEN O'CONNOR
333 West Wacker Drive
Suite 1900
Chicago, IL 60606
Tel: (312) 382-3100
Fax: (312) 382-8910
Email: amorrone@cozen.com
        tbaria@cozen.com

MARK E. UTKE
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2164
Fax: (215) 701-2164
Email: mutke@cozen.com

STEPHEN D. HOYNE
STEPHEN D. HOYNE
   ATTORNEY AT LAW
P.O. Box 210
St. Louis, MO 63026-0210
Tel: (314) 306-6399
Fax: (636) 225-7818
Email: stevehoyne@charter.net

*Attorneys for Appellant*

 
Appellate Case: 14-1783     Page: 1     Date Filed: 10/01/2014 Entry ID: 4202257

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................1

II. ARGUMENT .............................................................................1

   A. Dr. Eagar's Duly Disclosed and Improperly Excluded Design-Related
       Opinions...........................................................................2

     1. Dr. Eagar's duly disclosed opinions on the design of TracPipe
        CSST demonstrably link scientific concepts with engineering,
        design and manufacturing principles and practice. ...................3

     2. The District Court did not permit design-related opinion testimony
        by Dr. Eagar to reach the jury....................................................6

   B. The District Court abused its discretion in using an over-simplified,
       classification approach in evaluating Dr. Eagar's qualifications as a
       metal products design expert. ....................................................9

   C. Dr. Eagar's precluded testimony would have assisted the jury in
       understanding safe design and engineering practice, metallurgical and
       materials concepts................................................................17

   D. The District Court's qualifying of Dr. Harri Kytomaa to give
       metallurgical opinion testimony cannot be reconciled with Its deciding
       that Dr. Eagar was unqualified to give design defect opinion
       testimony..........................................................................22

III. CONCLUSION ........................................................................24

i

# TABLE OF AUTHORITIES

**Cases**

*Cincinnati Ins. Co. v. Omega Flex, Inc.*,
  No. 10-cv-00670, 2013 U.S. Dist. LEXIS 69005 (W.D. Ky. May
  15, 2013) .................................................................................................12

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2009) ....................................................16, 20

*Hickerson v. Pride Mobility Prods. Corp.*,
  470 F.3d 1252 (8th Cir. 2006) .............................................................23

*Khoury v. Philips Med. Sys.*,
  614 F.3d 888 (8th Cir. 2010) ...............................................13, 14, 15

*Kumho Tire Co., Ltd v. Carmichael*,
  526 U.S. 137 (1999).......................................................................9, 12

*Neb. Plastics, Inc. v. Holland Colors Am., Inc.*,
  408 F.3d 410 (8th Cir. 2005) ...............................................................16

*Presley v. Lakewood Eng'g & Mfg Co.*,
  553 F.3d 638 (8th Cir. 2009) ...............................................................16

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
  752 F.3d 807 (9th Cir. 2014) ......................................................11, 12

*Shuck v. CNH Am., LLC*,
  498 F.3d 868 (8th Cir. 2007) ...............................................................23

*Tune v. Synergy Gas Corp.*,
  883 S.W.2d 10 (Mo. 1994) ..................................................................21

*United States v. Black Hills Power, Inc.*,
  No. 2006 U.S. Dist. LEXIS 101215 (D.S.D. June 12, 2006) .............19

*Voegeli v. Lewis*,
  568 F.2d 89 (8th Cir. 1977) .................................................................21

Appellate Case: 14-1783    Page: 3    Date Filed: 10/01/2014 Entry ID: 4202257

**Other Authorities**

Fed. R. Civ. P. 50(a) .............................................................................21

Fed. R. Civ. P. 56(a) .............................................................................21

Fed. R. Evid. 403 ..................................................................................17

Fed. R. Evid. 702 .............................................................................18, 19

Appellate Case: 14-1783     Page: 4     Date Filed: 10/01/2014 Entry ID: 4202257

# I.  INTRODUCTION

The District Court demonstrably abused its discretion when determining whether Dr. Thomas Eagar, ScD., P.E., was qualified to give design defect opinion testimony at trial.  In a case in which jurors were asked to perpend complex scientific and engineering-based testimony, the District Court engaged in a casual analysis of the parties' experts' qualifications which led to the preclusion of Dr. Eagar's design defect testimony and the admission of Dr. Harri Kytomaa's metallurgical opinion testimony.  The incompatible results reached by the District Court in evaluating witness qualifications in this case cannot be reconciled with either prevailing law or even between the results themselves.  Justice was miscarried.

# II.  ARGUMENT

Omega Flex defends the District Court's analysis of Dr. Eagar's expert qualifications arguing that the District Court fully and fairly evaluated Dr. Eagar's qualifications to offer design defect testimony.  This is not so.  With respect to Dr. Eagar, the District Court resorted to relying on a "classification" system for qualifying experts that is a departure from the *Daubert* analysis as applied in this Circuit.  Omega Flex and the District Court err in identifying the subject matter on which Dr. Eagar was to opine and neither the District Court nor Omega Flex articulate how Dr. Eagar's experience, skills, experience and education were

1

anything but inseverable from the subject matter on which he was proffered to testify.  In comparison, the District Court did not rely on the label affixed to Dr. Kytomaa's expertise and found him qualified to offer metallurgical opinions.  The results are irreconcilable, prejudicial and evince an overt deviation from the analysis required of expert qualifications under long-standing Eighth Circuit law.

Omega Flex claims ignorance of Dr. Eagar's proffered opinion testimony and raises issues not on appeal in response to American Auto's because the District Court's rulings with respect to Dr. Eagar and Dr. Kytomaa cannot reasonably be explained.  Dr. Eagar's design opinions were duly disclosed, the subject of extensive motion practice and fully stated on appeal.  Moreover, the District Court never reached the subjects of the methodology and bases underlying Dr. Eagar's design defect opinions in the trial court proceedings.  Omega Flex attempts to divert the focus of this appeal from the flawed methodology used by the District Court in evaluating Dr. Eagar's credentials and its red herring arguments should be ignored.

A.    **<u>Dr. Eagar's Duly Disclosed and Improperly Excluded Design-Related Opinions</u>**

As stated in Appellant's opening brief, the District Court barred Dr. Eagar from testifying "that from a design perspective, Omega Flex's material selection for its TracPipe product was (1) ill-suited for the application and (2) the result of an improper design process undertaken by Omega Flex."  (Appellant's Br. 16)

2

1. *Dr. Eagar's duly disclosed opinions on the design of TracPipe CSST demonstrably link scientific concepts with engineering, design and manufacturing principles and practice.*

Omega Flex significantly understates Dr. Eagar's design-related opinions that the Record on Appeal shows in great detail. Omega Flex represents to the Court that Dr. Eagar's "defect opinion" is limited to the following:

> the material properties and geometry of CSST make the probability of a lightning flash causing a hole due to either resistive heating or an electrical arc between adjacent electrical conductors many times more hazardous than the use of steel pipe for transport of hydrocarbon cases . . . CSST is so thin that it is unreasonably dangerous unless all joints contain electrical jumpers and the CSST is grounded every few feet to a suitable lightning ground strap. (Appellee's Br. 19)

Dr. Eagar was disclosed, however, as also having the following design-related opinions:

> . . . Black iron pipe is approximately ten times less susceptible to resistive melting (when subjected to the same level of thermal power) due to the ten times greater wall thickness of black iron as compared to CSST. There is simply more metal to heat in black iron pipe as compared to CSST. The thin gauge of CSST makes CSST much less resistant to melting and perforation as compared with black iron pipe. (A. 0153)

> . . . The duration of these electrical events [lightning strokes] must be compared with the thermal time constant of the wall thickness of the CSST or the steel pipe to determine whether the heat from the arcing event has sufficient time to penetrate the metal wall by thermal diffusion. If the metal wall is too thick for the heat from the arc to penetrate the wall during the time of the continuing current flow . . . , an arc strike on the surface of the tube will occur but the wall will not be fully penetrated and gas will not escape. If the wall is too thin, the wall will be perforated, releasing gas which is immediately ignited by the hot molten steel surrounding the hole. (A. 0153)

3

. . . [T]he potential of initiating an arc from one conductor to an adjacent conductor due to voltages created by resistive heating is several orders of magnitude greater with CSST as compared with equivalent diameter black iron pipe, which has much lower electrical resistance. (A. 0156)

. . . Field experience with transient failures of this type indicates that the arcing will initiate near changes in geometry, such as a bend in the conductor, or an area where it passes a metallic or ferromagnetic structure or the peaks of the convolutions of CSST. (A. 0156)

Dr. Eagar references black iron pipe in comparison to TracPipe CSST to provide context for his opinions on its design—that CSST was sold as a replacement and better alternative to black iron pipe which is impervious to the lightning strikes that make CSST an unsafe product for use. He opines that "it is unclear how [Omega Flex] can maintain even today that CSST has no unusual hazards as compared to the black iron pipe which it replaces." (A. 0165) It has been known throughout the metals and materials industry for almost a century that thin stainless steel is susceptible to lightning damage. Dr. Eagar remarked in his report that it has been known for nearly 70 years that thin-walled metal material such as CSST "cannot survive either direct or indirect lightning arcs without perforation[.]" (A. 0167)

Ultimately, Dr. Eagar opines that Omega Flex failed to adhere to safe design and manufacturing principles when Omega Flex "sold a fuel gas containing

4

product which can be expected to perforate in a lightning storm."[1] (A. 0157) This he bases on Omega Flex's failing to account for the known dangers posed by lightning to metal products and particularly gas piping from the Engineering Code of Ethics, which under both Canadian and U.S. versions state that the public welfare is paramount in engineering practice. (A. 0169–70) He flatly states in his report that his opinions in this regard are based also on his personal "experience as an engineer on retainer with both a manufacturer of medical instruments and a manufacturer and re-builder of aircraft engines." (A. 0170)

Stated succinctly, Dr. Eagar opines that Omega Flex's selection of very thin-walled, corrugated, stainless steel as an appropriate material to transmit gas throughout millions of American homes constituted a design flaw. Omega Flex had at its disposal nearly century-old data of the effects of lightning on metal of all types and thicknesses. According to Dr. Eagar, a responsible design approach would have been to identify the characteristics and safety benefits of those characteristics of the product Omega Flex intended for its new product to replace: black iron pipe. Dr. Eagar opines that Omega Flex should have conducted an appropriate materials selection analysis, and used appropriate materials in TracPipe

---

[1] American Auto's Trial Exhibit 30 (TE 157–88), a Vaisala STRIKEnet lightning strike report generated with data drawn from the National Lightning Detection Network, shows that 580 lightning strikes occurred within a 5 mile radius of the Kostecki home on the evening of the fire.

Appellate Case: 14-1783    Page: 9    Date Filed: 10/01/2014 Entry ID: 4202257

that, in combination or otherwise, would protect consumers against lightning damage to the same degree of traditional black iron pipe. According to Dr. Eagar, Omega Flex ignored this critical materials selection analysis, implemented its flawed design and saw its lightning-vulnerable product installed in millions of homes.

2. *The District Court did not permit design-related opinion testimony by Dr. Eagar to reach the jury.*

Omega Flex's argument that Dr. Eagar was permitted to testify that TracPipe CSST's design was deficient and unsafe when compared to black iron pipe is a fallacy and specious at best. Prior to Dr. Eagar taking the stand, the following exchanges took place at sidebar:

> MR. CONROY: Because I think in addition we heard from counsel in his opening talking about the comparisons that Dr. Eagar would make between black iron pipe and CSST, that CSST was X percentage more likely to perforate, that he was talking about one being safer than the other. Again, I don't think Dr. Eagar should be allowed to give the opinion that black iron pipe is safer than CSST. Because when you talk about safer, that is a design opinion.

> THE COURT: I agree with that, and he will not be permitted to give an opinion that one is safer than the other. He can talk about its metallurgical composition. He can talk about the metallurgical features. And he can talk about the results of his testing. . . .

> Making the further comment that it is safer, he will not be permitted to do because by his own admission he is not a design expert. ([Trial Tr. Vol. 2, 183–84] A. 0696–97)

> . . .

6

MR. CONROY: And to the extent that I hear something that goes beyond where I think the Court has allowed counsel to go, then I will have to object.

THE COURT: You will have to. Because, you know, right now I'm hoping that both counsel will adhere to my ruling that Dr. Eagar can talk about the properties from a metallurgical standpoint, but not begin to opine that one is safer than the other or that this one would therefore be better. It's not a matter of using the word "safe" or unsafe," but you understand what I'm saying.

MR. UTKE: And I want the Court to know that the calculation that has been produced in his report demonstrates that CSST is up to a million times more likely to fail because of the wall thickness being thinner than black iron pipe based on scientific calculations.

MR. CONROY: I would object to that, Judge. The very statement he just said and the way it's articulated in the report, that's just another way of saying that black iron pipe is a better design.

THE COURT: Yeah, I mean, the problem is once you begin using words like fail, we begin to get into these qualitative descriptions and comparisons, and that I won't permit. Okay. So you need to tread very carefully. You need to talk about this level of energy can produce perforation with CSST, this level of energy produces perforation with black iron pipe. ([Trial Tr. Vol. 2, 190–91] A. 703–04)

When the District Court determined that Dr. Eagar's testimony too closely toed the line in comparing black iron pipe and CSST and opining as to CSST's design, that testimony was stricken and the jury was instructed to disregard the testimony:

Q. And, sir, the same question for the thickness of the steel on the black iron pipe that's in front of you. Is there a measure of energy that it would take to penetrate that steel?

Appellate Case: 14-1783   Page: 11   Date Filed: 10/01/2014 Entry ID: 4202257

A.    You can still use the same coulombs, yes.  And, in fact, I know of one test where we were unable to penetrate at 267 coulombs.  In fact, I can tell you based on the testing that's been done, it takes 2,500 times as much energy and you still haven't penetrated the black iron pipe, as it does to penetrate the CSST.  I've estimated the difference in penetration energy is about 5,000 times.  It takes 5,000 times as much energy to penetrate this thing that's ten times thicker.

MR. CONROY:  Judge, I —

THE COURT:  Mr. Utke, I'm going to ask you to start asking this witness more direct questions and let him answer because —

MR. UTKE:  I'll guide his testimony, sure.

MR. CONROY:  And just one second, please.  Some of the comments we're hearing, Judge, is going over the line of what we had discussed before in terms of these comparisons.  He has given us dimension, which he was free to do, but now we're getting into certain comparisons that might be over the line.

THE COURT:  And I agree with that.

MR. CONROY:  And I would ask to the extent he's making those comparisons, those answers be stricken from the record.

THE COURT:  I will, in fact, strike the last comments from the record.  And I'm going to direct the jury to disregard those last few comparison comments.  ([Trial Tr. Vol. 2, 207–08] A. 720–21)

While he was in one instance allowed to testify that CSST was too thin to resist perforation by lightning energy, he was not allowed to: testify that 0.011-inch thick corrugated stainless steel was unfit for a product that would be carrying gas in consumer homes; illustrate the difference between other metals and CSST with respect to resisting lightning damage; and testify that Omega Flex's design process was significantly flawed for failing to account for the risk of lightning

8

damage considering the known susceptibility of thin metals to lightning damage and the known safety of the traditional gas carrying media, black iron pipe, in this regard. As illustrated above, any opinion testimony from Dr. Eagar that closely approached the design issue was not allowed to either be given to or be considered by the jury.

**B.** **The District Court abused its discretion in using an over-simplified, classification approach in evaluating Dr. Eagar's qualifications as a metal products design expert.**

Omega Flex's argument that the District Court gave proper consideration to Dr. Eagar's training and experience is betrayed by the District Court's actual analysis. *Daubert* and its progeny instruct district courts to evaluate proposed expert testimony on a case-by-case basis:

> We agree . . . that "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." [citation omitted] The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in Daubert, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue. *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 150 (1999).

The *Kumho* Court explained further that the objective of the gatekeeping requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing opinion testimony upon professional studies or personal experience, employs in the courtroom the same level of

9

intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.* at 152.

The primary inquiry in this case then, answered incorrectly by the District Court, is "what is the relevant field?" Omega Flex advocates and the District Court erroneously accepted that the relevant field is "CSST system design" versus the design of a thin metal tube intended by its manufacturer to replace black iron gas piping. (Appellee's Br. 20; Add. 12 & n.3–4) As American Auto explained in its opening brief, the District Court failed to distinguish the design of a working CSST system as it would be installed by a contractor from the simple, two-component product. (Appellant's Br. 30–31)

After erroneously determining that "CSST system design" was the relevant field, the District Court only superficially analyzed Dr. Eagar's qualifications. The District Court seized on the idea that his lack of "CSST system design" experience rendered him unfit to describe to the jury how the TracPipe's design was defective and how Omega Flex abrogated its duties as a product manufacturer in failing to adhere to fundamental design principles. Although the District Court recognized that "[T]he test is whether the witness' training and experience demonstrate a knowledge of the subject matter[,]" (Add. 45) it offered only the following:

> . . . Plaintiff has not shown by a preponderance of the evidence that Eagar can qualify as an expert with respect to product design and product warnings to provide a reliable basis for his opinions on these issues. Eagar has specifically disavowed such expertise and his areas

10

of expertise bear no more than a remote relationship to product design and warnings. In the absence of specific expertise on these issues, his testimony will provide little assistance to the jury. (Add. 13)

The District Court provided virtually no explanation of how Dr. Eagar's robust credentials with respect to his education in metallurgy and engineering, designing alloys, consulting work and teaching of materials selection and products design had only a "remote relationship to product design." (See Add. 13; Add. 45–46) The perfunctory explanation for forbidding Dr. Eagar from testifying about the defective design of TracPipe exhibits the abuse of discretion by the District Court and betrays Omega Flex's argument that Dr. Eagar's credentials were fully and fairly considered. See *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) ("In two conclusory sentences and without analysis or explanation, the district court held that [the witness] was not a qualified expert 'on the scientific, technical, or specialized data on which he purports to opine' and that his opinion regarding relative humidity was not based on sufficient facts or data and was not the product of reliable principles and methods. The district court abused its discretion in reaching these conclusions.").

Further illustrating the lacking nature of the District Court's evaluation of Dr. Eagar's expert qualifications is the Court's inexplicable mixing of the concepts of CSST system design and product design which Omega Flex fails to account for in its brief. In first ruling to exclude Dr. Eagar's design defect opinion testimony

11

and later explaining how it was correct in denying American Auto's motion for a new trial, the District Court relied on Dr. Eagar's disavowal of experience in designing CSST systems, *id.*; however, neither the District Court nor Omega Flex explain the significant difference between CSST system and product design. The District Court and Omega Flex fail to demonstrate how Dr. Eagar's academic and professional experience in the fields of metallurgy, metal alloy design, materials selection and product design as set forth bore no more than a "remote relationship" to the design of the TracPipe CSST product. This leap in logic illustrates the fundamentally flawed nature of the District Court's approach and overcomes any suggestion that Dr. Eagar's qualifications were "properly considered." (Appellee's Br. 20)

The District Court also neglected to evaluate Dr. Eagar's credentials and experience as they relate to this case in disregard of the case-by-case approach required by *Kumho*, 526 U.S. at 150. Instead, the District Court relied on erroneous readings of the opinions of extra-jurisdictional district courts that limited Dr. Eagar's testimony in one way or another. For the reasons raised in American Auto's opening brief, this Court should reject Omega Flex's argument that *Cincinnati Ins. Co. v. Omega Flex, Inc.*, No. 10-cv-00670, 2013 U.S. Dist. LEXIS 69005 (W.D. Ky. May 15, 2013), in which that court precluded Dr. Eagar from

12

giving warnings-related opinions, bears any relationship to the design defect issues before this Court on appeal.[2]

In evaluating Dr. Eagar's qualifications to testify concerning inappropriate material selection for TracPipe CSST, it appears that the District Court's restrictive approach relied on the concept of "labeling" as opposed to the determination of whether the subject matter of his opinions relates to his experience, knowledge, and skills. Omega Flex argues that this approach is somehow appropriate citing *Khoury v. Philips Med. Sys.*, 614 F.3d 888 (8th Cir. 2010) as an example.[3] *Khoury*, however, lends no support to Omega Flex's argument. The inquiry concerned the design of a single track system used to move a complex medical machine within an operating room. *Id.* at 892. A nurse had, without warning, manipulated the device when a patient was in the room without warning the plaintiff doctor, catching the plaintiff off guard who suffered injury attempting to stop the machine's motion. *Id.* at 890. This Court affirmed the trial

---

[2] Omega Flex suggests that this Court consider a case from the District of Connecticut. (Appellee's Br. 21 & n.21) Omega Flex overstates the limits placed on Dr. Eagar in that case. Upon a closer review of the transcript, that court allowed Dr. Eagar to offer metallurgically-related design opinions at trial and limited his testimony only to the extent that it would touch on "legal issues." (OFADD-005) Omega Flex fails to explain how that jurisdiction's law would be related to the issues on appeal here.

[3] The District Court also cited *Khoury* for this purpose in denying American Auto's motion for a new trial. See Mem. & Order, ECF No. 209 at 8; Add. 46.

Appellate Case: 14-1783     Page: 17     Date Filed: 10/01/2014 Entry ID: 4202257

court's finding that the plaintiff's expert, an ergonomist, was unqualified to render an opinion on the design of a combined monitor bank and radiation shield used in a catheterization laboratory. *Id.* at 893. That the expert had no training, experience or education in the design of laboratories or of monitor banks and radiation shields was undisputed. *Id.* This Court then analyzed what the proffered expert did, considering the definition of ergonomics: "[t]he scientific study of the efficiency of man in his working environment." *Id.* (quotations and citations omitted). Only after considering the scope of the expert's experience in the context of the design issue before it, this Court held that the district court did not abuse its discretion in barring the expert from testifying "outside his area of expertise and opining as to the proper design" of the combined monitor bank and radiation shield. *Id.*

In this case, however, the District Court undertook no such analysis. First, it failed to identify the correct area of expertise unlike the district court in *Khoury* and, second, made no attempt to consider the relationship between Dr. Eagar's wealth of experience in the materials and metals areas to the design issues in the case before it. While "metallurgist" is only one of the hats Dr. Eagar wears, the field of metallurgy is defined as "[t]he science that deals with procedures used in extracting metals from their ores, purifying and alloying metals, and creating useful objects from metals." Am. Heritage Dict. 1133 (3d ed. 1992). Unlike the limited expert in *Khoury* whose expertise was limited to the study of the efficiency

14

of man in the working environment," *id.* at 893, Dr. Eagar, as a metallurgist, has

nearly 40 years of experience in a field with a direct relationship to creating metal

products such as CSST. He has taught design concepts to more than a generation

of engineering students at M.I.T., world-renowned for its science and engineering

programs. As demonstrated, Dr. Eagar has consummate metals design experience;

materials selection and engineering experience in both industry and academia; and

product design experience in both academia and industry—all of which necessarily

relate to the design of and materials selection for a product consisting of only a

metal tube and plastic jacket.

Finally, Omega Flex is wrong in citing *Khoury* as standing for the concept

that an expert must have design experience with a particular product as a

prerequisite for qualifying to offer opinion testimony on that product's design. As

illustrated above, the *Khoury* court looked for a nexus between the design of the

product at issue and the proffered expert's, skills, education, training and

experience. Omega Flex thus advocates for a rigid, formulaic approach to

evaluating an expert's qualifications and for a departure from the approach of this

Circuit:

> Acceptance of an expert's qualifications cannot depend on his precise
> skill or background in a particular profession or industry. If the
> subject matter (safe design) falls within a person's experience in or
> overall knowledge of a specialized skill (engineering), this is
> sufficient to qualify the witness as an expert. We deem it too strict a
> standard that one must have manufactured or previously designed

Appellate Case: 14-1783    Page: 19    Date Filed: 10/01/2014 Entry ID: 4202257

machinery to understand principles of safe design. *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856 (8th Cir. 1975).

Finally, much of Omega Flex's argument pertaining to Dr. Eagar's qualifications to testify regarding the defective design of TracPipe calls into question issues that are not germane to the issues on appeal. While Omega Flex asserts that the District Court "examined in detail Dr. Eagar's education, background, and experience," Omega Flex resorts to attacking the methodology and bases for Dr. Eagar's excluded testimony (Appellee's Br. 21–22) and makes no substantive illustration of how the District Court properly evaluated and articulated how the heavily-credentialed Dr. Eagar could not offer opinions concerning the design of Omega Flex's TracPipe CSST. The District Court did not delve into assessing the methodology underlying Dr. Eagar's design opinions and, to the extent Omega Flex has a valid concern, the issue should not be decided here.[4]

---

[4] Nor did Omega Flex raise the issue in its Counter Statement of Issues.(Appellee's Br. 1) For the reasons explained in the text above, there is no need to consider *Presley v. Lakewood Eng'g & Mfg Co.*, 553 F.3d 638, 645–46 (8th Cir. 2009) (barring expert's opinion testimony related to fire spread in light of flawed testing and "vague theorizing"); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2009) (focusing on the "conclusions and methodology" employed by the expert in reaching an opinion); and *Neb. Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410, 416–17 (8th Cir. 2005) (again focusing on the methodology used by a proffered expert where the expert failed to take into account several facts into a damages calculation).

Appellate Case: 14-1783   Page: 20   Date Filed: 10/01/2014 Entry ID: 4202257

In this case, the District Court failed to demonstrate how Dr. Eagar's metallurgical experience, materials design and engineering experience, and product design experience bears only a remote relationship to the materials selection and design issues of Omega Flex's predominantly metal product. The District Court abused its discretion in failing to properly identify the relevant area of expertise and failing to exercise a meaningful analysis of the relationship between Dr. Eagar's qualifications and the relevant area of expertise.

**C.** **Dr. Eagar's precluded testimony would have assisted the jury in understanding safe design and engineering practice, metallurgical and materials concepts.**

The several ways in which Omega Flex asserts that the District Court's preclusion of Dr. Eagar's design-related opinion testimony, when subject to the appropriate analysis, fail to show that American Auto was anything but prejudiced at trial. Dr. Eagar's proffered testimony would have been helpful to the jury and its admission would not have run afoul of Fed. R. Evid. 403.

The jury was tasked with considering and evaluating principles of materials science, metallurgy, arc physics, electricity and lightning energy. Dr. Eagar's design defect opinions bridge the gap between principles of safe design and engineering practice and the complex evidence presented at trial by both parties' liability experts. Omega Flex, however, confuses the idea of a simple product with that simple product's complex mode of failure and the design considerations and

17

process for that simple product when it argues that Dr. Eagar's design defect testimony would have told the jury nothing more than that TracPipe CSST is flexible and made of steel. (Appellee's Br. 19)

When determining whether expert testimony is appropriate, courts use "the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702 Notes of Advisory Committee. Dr. Eagar was prepared to testify concerning the known risks that lightning posed to traditional gas piping from a materials selection standpoint, and the assessment of material safety and suitability that Omega Flex should have used when designing TracPipe which Omega Flex intended to sell as an alternative or replacement to traditional gas pipe products. Dr. Eagar's testimony in this regard was appropriate and needed under the applicable test.

Omega Flex asserts, baldly, that the jury was capable of answering the question as to whether TracPipe was flawed from a design and materials selection standpoint without the benefit of expert opinion. (Appellee's Br. 19) In making this assertion, Omega Flex grossly understates the gravamen and content of Dr. Eagar's opinions, see § II.A, and makes no attempt to explain how principles of metallurgy, arc physics, electricity, lightning energy, materials energy and product

18

design were within the ken of the average juror.  In any event, Rule 702 recognizes

the importance and helpful nature of an admissible expert opinion for explaining to

a jury the nature and relationship of a complex set of facts.  See, e.g., *United States*

*v. Black Hills Power, Inc.*, No. 2006 U.S. Dist. LEXIS 101215, at *39 (D.S.D.

June 12, 2006) (expert's opinion testimony appropriate in a "highly technical and

complex case involving multiple experts offering various opinions to help the jury

determine the cause and origin of the . . . fire").

The fact finder in this case was deprived of Dr. Eagar's testimony which

would have connected the complex trial testimony that included metallurgical and

electrical concepts to those of safe design and manufacturing which the jury was

called upon to evaluate.  The District Court instructed the jury as follows:

> Your verdict must be for plaintiff if you believe:
>
> First, defendant designed the corrugated stainless steel tubing, and;
>
> Second, the corrugated stainless steel tubing presented a fire hazard because it did not have a wall thickness capable of sufficiently withstanding energy from an indirect lightning strike, and;
>
> Third, defendant failed to use ordinary care to design the corrugated stainless steel tubing to be reasonably safe, and;
>
> Fourth, as a direct result of such failure, plaintiff sustained damage.
>
> The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful person would use under the same or similar circumstances.

. . . Your verdict must be for plaintiff if you believe:

First, defendant sold the corrugated stainless steel tubing in the course of defendant's business, and;

Second, the corrugated stainless steel tubing was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and;

Third, the corrugated stainless steel tubing was used in a manner reasonably anticipated, and;

Fourth, plaintiff sustained damage as a direct result of such defective condition as existed when the corrugated stainless steel tubing was sold. ([Trial Tr. Vol. 5, 113–14] A. 1076–77)

In light of the District Court's preclusion of Dr. Eagar's testimony, American Auto was denied its substantive right and opportunity to present "its entire design defect case to the jury." (Appellee's Br. 29) Dr. Eagar's testimony would have shown that Omega Flex's design process lacked consideration of and reference to black iron pipe from a materials safety standpoint and that Omega Flex's design and material selection process failed to comport with principles of good design and engineering practice. This testimony is relevant to the District Court's second instruction on American Auto's strict liability claims and second and third instructions on American Auto's negligence claims. As American Auto previously illustrated, the lack of expert testimony on the defective design issue was a highlight of Omega Flex's closing argument and that a different result at trial would have been reached. (Appellant's Br. 39; *cf. Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) ("It cannot be said that the

20

verdict would have been the same without the expert testimony, and its admission affected [the defendant's] substantial rights.").

Finally, Omega Flex argues, without support, that Plaintiff's survival of Omega Flex's last minute motion for summary judgment on the eve of trial and its motion for directed verdict at the close of Plaintiff's case illustrates that Plaintiff suffered no undue prejudice as a result of the District Court's erroneous preclusion of Dr. Eagar's design defect testimony. That American Auto resisted the motions in spite of the District Court's flawed evidentiary ruling is irrelevant to this appeal. Moreover, these motions were decided by the District Court as matters of law and not by the fact finder who was denied the benefit of Dr. Eagar's testimony. See Fed. R. Civ. P. 50(a); Fed. R. Civ. P. 56(a).

Although under Missouri law, "expert testimony is not necessarily required to establish product defect or unreasonable danger," *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 14 (Mo. 1994), justice was miscarried in this case when American Auto was denied its right to present Dr. Eagar's design-related opinion testimony to the jury. A litigant need not be "completely deprived" of its opportunity to present its case to have suffered substantial prejudice as the District Court stated in denying American Auto's motion for new trial and as Omega Flex urges on appeal. See *Voegeli v. Lewis*, 568 F.2d 89, 95 (8th Cir. 1977) (new trial ordered where plaintiffs "did not receive fair consideration of their claims"). It was up to the jury

21

to weigh the evidence and credibility of the witness at trial and the District Court's abuse of discretion in excluding Dr. Eagar's design defect testimony tipped the scales in favor of Omega Flex.

**D.  The District Court's qualifying of Dr. Harri Kytomaa to give metallurgical opinion testimony cannot be reconciled with Its deciding that Dr. Eagar was unqualified to give design defect opinion testimony.**

Omega Flex fails to explain the disparate treatment the District Court gave in considering the qualifications of Dr. Eagar and Omega Flex's expert, Dr. Harri Kytomaa.  Despite Dr. Eagar's metallurgical and materials science background, his teaching of products design and materials selection courses at the Massachusetts Institute of Technology, his developing and patenting alloys, abrasives and a laser device, and myriad of other industry and academic credentials, the District Court found him unqualified to give opinion testimony concerning the design of TracPipe.  On the other hand, and knowing that the "thrust of his opinion is to demonstrate the flaws in Eagar's causation hypothesis" (which involved a significant metallurgical analysis of the perforations in the TracPipe), the District Court found Dr. Kytomaa qualified to attack Dr. Eagar's metallurgical opinions at trial.  (ADD-16)  While the District Court required that Dr. Eagar have experience designing CSST systems to offer an opinion on the design of the product, the District Court permitted Dr. Kytomaa, a mechanical engineer but not a

22

metallurgist, to give extensive metallurgically-based opinion testimony at trial. ([Trial Tr. Vol. 4, 45–53]; A. 1008–16)

Any suggestion that the District Court applied an "identical" standard in considering the subject area of the proffered opinion and the qualifications of the witness proves false. Omega Flex and the District Court attempt to explain the disparity by couching Dr. Kytomaa's metallurgical opinions in the context of fire causation. (Appellee's Br. 34; Add. 48) As such, they assert that Dr. Kytomaa's metallurgical opinions were admissible based on his "observations coupled with expertise." *Id.* (citing *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874–75 (8th Cir. 2007)). *Shuck*, however, concerned the methodology used by two expert witnesses whose qualifications were unchallenged. *Shuck*, 498 F.3d at 874. Similarly inapposite is *Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1257 (8th Cir. 2006) in which the defendant made no contention that the plaintiff's fire causation expert witness was unqualified to determine a fire's point of origin; rather, the defendant argued that the expert's methodology was flawed.

Neither the District Court nor Omega Flex explains how Dr. Kytomaa's mechanical engineering background and expertise in fire investigation qualify him to give testimony that was purely metallurgical in nature. Dr. Kytomaa was allowed to opine at trial on the significance of characteristics of the holes in the TracPipe CSST involving the relationship between the sharpness of the metal

23

edges and the time it would have taken molten metal to re-solidify, how molten metal would react to certain pressures, and how "tiny" metal spatter is indicative of a failure caused by household current. (A. 1008–16)

The District Court took an expansive approach when considering Dr. Kytomaa's mechanical engineering background with respect to the subject area of metallurgy and an unduly restrictive approach when considering Dr. Eagar's experience, education and skills with respect to metal products design. The results of the District Court's analysis cannot be reconciled and illustrate the error in barring Dr. Eagar's design defect testimony and how the District Court abused its discretion.

## III. CONCLUSION

When considering whether an expert witness is qualified to give certain testimony, a district court must first correctly identify the subject area on which the expert is offered to give opinion testimony. A district court must then consider the expert's skills, training, knowledge, experience and education and evaluate the relationship between the expert's background and the subject area. The District Court abused its discretion in the proceedings below by failing to undertake this analysis in accord with Eight Circuit precedent.

American Auto respectfully asks, for the foregoing reasons, that this Court reverse the district court's orders of June 11, 2013 and March 5, 2014 that,

24

respectively, excluded design defect opinion testimony of Thomas W. Eagar,

Sc.D., P.E., and denied American Auto's motion for a new trial.

Respectfully submitted,

COZEN O'CONNOR

s/Anthony J. Morrone
Anthony J. Morrone

Anthony J. Morrone
Thaddeus Baria
COZEN O'CONNOR
333 W. Wacker Drive, Suite 1900
Chicago, Illinois 60606
Phone No: (312) 382-3100
Fax No: (312) 382-8910
Email: amorrone@cozen.com,
     tbaria@cozen.com

Mark E. Utke
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone No: (215) 665-2164
Fax: (215) 701-2164
Email: mutke@cozen.com

Stephen D. Hoyne
Stephen A. Hoyne at Law
P.O. Box 210
St. Louis, MO 63026-0210
Phone No: (314) 306-6399
Fax No: (636) 225-7818
Email: stevehoyne@charter.net

Appellate Case: 14-1783      Page: 29      Date Filed: 10/01/2014 Entry ID: 4202257

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document, including all headings, footnotes, and quotations, but excluding summary of the case, the table of contents, table of authorities, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 6,243 words, as determined by the word count of the word-processing software used to prepare this document, specifically Microsoft Word 2007 in Times New Roman 14 point font, which is no more than 7,000 words permitted under Fed.R.App.P. 32(a)(7)(B)(i).

s/Thaddeus Baria
Thaddeus Baria

*Counsel for Appellants*

26

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the reply brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

s/Thaddeus Baria
Thaddeus Baria

*Counsel for Appellants*

Appellate Case: 14-1783    Page: 31    Date Filed: 10/01/2014 Entry ID: 4202257

# CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2014, I electronically filed the Reply Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Eight Circuit by using the CM/ECF system.  I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system:

Thomas P. Berra Jr.  
Neal Frederick Perryman  
Oliver H. Thomas  
LEWIS & RICE  
Suite 2500  
600 Washington Avenue  
Saint Louis, MO 63101

William J. Conroy  
Lynne O'Brien Ingram  
Katherine A. Wang  
CAMPBELL & CAMPBELL  
Suite 330  
1205 Westlake Drive  
Berwyn, PA 19312

I further certify that the following participants in the case are not registered CM/ECF users. On October 1, 2014, two copies of the Reply Brief of Appellant were sent via first-class mail, proper postage prepaid to the following non-CM/ECF participants:

Douglas G. Smith  
Diana M. Watral  
KIRKLAND & ELLIS  
300 N. LaSalle  
Chicago, IL 60654

s/Thaddeus Baria  
Thaddeus Baria

*Counsel for Appellants*

28